390 A.2d 827

**COMMONWEALTH of Pennsylvania**

v.

**Joseph ALVIN, Appellant.**

Superior Court of Pennsylvania.

Argued Sept. 14, 1976.

Decided July 12, 1978.

John Paul Curran, Philadelphia, for appellant.

Jane Cutler Greenspan, Assistant District Attorney, Philadelphia, with her F. Emmett Fitzpatrick, District Attorney, Philadelphia, for Commonwealth, appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

PER CURIAM:

This is an appeal from the judgment of sentence of the Court of Common Pleas, of Philadelphia County, Trial Division, Criminal Section, by the defendant-appellant, Joseph Alvin, after conviction in a non-jury trial of robbery, possession of instruments of crime, carrying a firearm on public streets and property, unlawfully carrying a firearm without a license in a vehicle and criminal conspiracy; and from the denial of post-trial motions.

The facts are as follows: Mr. and Mrs. Charles Sassaman are an elderly, crippled couple who operated a neighborhood variety store at 2701 East Orleans Street, Philadelphia. The defendant walked into the store at about 3:30 P.M. on November 9, 1974. He was carrying a sawed-off shot gun. Pointing the gun at Mrs. Sassaman, he announced "This is a hold-up" and knocked the cash register to the floor. He grabbed the bills from the cash register drawer. The woman began to scream. Sergeant Gerald Lang, a Philadelphia policeman on his way home from work, responded to her cries. As he entered the store, the defendant pointed the shot gun at him and forced him against the door. The defendant then fled in a dark, blue Comet automobile driven by another man who had been waiting outside. Drawing his service revolver, the officer shouted at them to stop. When they failed to stop, he fired, apparently puncturing one of the car's tires. He wrote down the license number of the car and relayed a description of the car and the defendants to the police radio.

The car careened down the street and nearly side-swiped the car of Charles Urbanski who was driving with his young son. The car jumped the curb and stopped and the men fled on foot.

Several days after the robbery another officer stopped the car driven by the defendant, which answered the description of the car used in the robbery. The officer knew the driver, Joseph Alvin. He denied his identity and refused to stop the car and get out when requested. He was placed under arrest. The car was owned by a Linda Foran who said she loaned it to the defendant.

The defendant filed timely motions to suppress the physical evidence that had been seized and was to be introduced at trial as well as certain identification testimony. These were heard before McDermott, J. and denied.

The defendant waived his right to a jury trial on July 9, 1975 and was tried non-jury by DiBona, J. He was found guilty of robbery, possession of instruments of crime, carrying a firearm on public streets and property, unlawfully carrying a firearm without a license in a vehicle, and crimi-

nal conspiracy. A demurrer was sustained to a charge of resisting arrest. He was sentenced for a period of not less than 7½ years nor more than 15 years. Sentence was suspended on all other bills.

The defendant raises the following issues on appeal: (1) That the court below erred in refusing to dismiss the charges because of violation of Pa.R.Crim.Pro. 1100; and (2) That the Suppression Judge erred in stating that credibility was not an issue and refusing to permit cross-examination of identification witnesses.

## RULE 1100

The complaint was filed on November 17, 1974. The defendant and his co-defendant were represented by a Public Defender at the preliminary hearing held November 22, 1974. The defendant expressed a wish, because of possible conflict of interest, to obtain private counsel and he was "in the process" of so doing. He was arraigned on December 20, 1974 and still had not obtained private counsel. Trial was set on January 21, 1975 but the defendant still had not retained counsel. Counsel was then appointed for him and the case continued until February 2, 1975. Trial could not be held on that date or in March because of lack of available court rooms. On April 29, 1975, a motion to sever was denied. On May 7, 1975 a hearing on other pre-trial motions was cut short when co-defendant's counsel was held in contempt of court and the court continued the case. On May 16, 1975, the Commonwealth filed a timely motion for extension of time. On June 23, 1975, the court held a hearing on this motion and extended the time for sixty (60) days on the ground that the Commonwealth used due diligence but trial could not be held because of the unavailability of court rooms. Defendant was tried non-jury on July 9, 1975 which was within the sixty day extension.

Under *Commonwealth v. Shelton*, 469 Pa. 8, 364 A.2d 694 (1976) and *Commonwealth v. Mayfield*, 469 Pa. 214, 364 A.2d 1345 (1976), the Supreme Court held that "judicial delay" such as unavailability of court rooms may be sufficient reason to grant an extension of time.

The Commonwealth exercised "due diligence" in bringing the defendant to trial by listing the case in January, but trial could not take place because of the unavailability of defendant's counsel. The case was also listed in February and March and not reached because of the unavailability of court rooms. The case was continued in April by the court because of a contempt charge. The court properly held that Rule 1100 was not violated.

## CROSS EXAMINATION AT SUPPRESSION HEARING

In *U. S. v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), the Supreme Court established certain factors to be considered in determining whether or not the in-court identification is tainted. These are:

(1) The prior opportunity to observe the alleged criminal act;

(2) The existence of any discrepancy between any pre-line-up description and the defendant's actual description;

(3) Any identification prior to lineup of another person;

(4) The identification by picture of the defendant prior to the lineup;

(5) Failure to identify defendant on a prior occasion

(6) Lapse of time between the alleged act and the lineup identification.

What the court did here was to say that once a witness testifies that he or she bases the identification on his or her observations at the time of the incident no further inquiry can be made of the incident until trial. Such a holding is incorrect where there is evidence of other, unduly suggestive identification procedures, and unless defense counsel can inquire into the witnesses' opportunity to observe the incident it cannot be shown whether the witnesses' in-court identification is based on the observations of the incident or the other improper identification, e. g. one-on-one identification of Sgt. Lang. The question, of course, is whether an improper identification of the defendant occurred. In the

case of Mr. Urbanski we hold that no improper identification of the defendant was made. The only evidence of such an improper identification was the fact that Urbanski saw a sheriff bring the defendant into the court room and the fact that the defendant was seated next to the co-defendant who Urbanski had seen in the hallway and recognized as one of the men who ran from the vehicle. Defendant was not seen in handcuffs. We feel that, although it would have been better for the court to permit examination of Urbanski, as to his ability to observe defendant at the scene, the failure to permit such an examination at the suppression hearing was at most harmless error. The case of Sgt. Lang, however, presents a more difficult problem because of the one-on-one identification made of him at the station house. Therefore, in his case the court was incorrect in not permitting defendant's examination of him as to his ability to observe defendant at the scene of the crime as that ability bears directly on the question of whether his in-court identification was based upon what he saw at the scene versus the station house identification.

At the suppression hearing held on June 25, 1975, Urbanski identified the defendant as one of the men who almost ran him off the road. He never attended any line-up and was shown photographs but couldn't identify them. The first time he saw the defendant after the incident was at the hearing where he saw the Sheriff bring him in and seat him beside the co-defendant. The court below at the suppression hearing refused defendant's questions directed to Urbanski which dealt with his ability to observe defendant at the scene of the incident.

When Sgt. Lang testified he stated that his identification was based on his observations made at the time of the incident on November 9, 1974 rather than the one-on-one confrontation made in the police station eight days later. Again, the court would not permit cross-examination of the witness by the defendant as to his opportunity to see and observe at the scene of the crime.

We should also point out that in the May 7, 1975 suppression hearing, at which the co-defendant's counsel was held in

contempt of court, the matter of Lang's ability to observe defendant at the scene of the crime was subject to extensive cross-examination by defendant's attorney. Lang's testimony was unshaken. It was at the second suppression hearing concerning the identification issue that the judge made his unfortunate ruling on defendant's attorney's right to cross-examine Lang as to his ability to observe defendant at the scene of the crime.

■ At trial, Sgt. Lang testified that his identification was based solely on the events of the day of the robbery and was not influenced by the one-on-one confrontation at the police station. His testimony was unshaken on cross-examination. Urbanski testified that on the day in question he saw the defendant riding as a passenger and saw him flee from the scene. Both witnesses positively identified the defendant in court. Both testified that their identifications were based on the happenings when the crime was committed.

The question before us is whether error as to cross-examination at the suppression hearing mandates a new trial or under the circumstances of the trial itself constitutes only harmless error.

The Commonwealth argues that the question has been waived because the defendant failed to object to the fact that the court cut off his cross-examination. In the case of the witness Urbanski the matter is waived as he failed to raise it in post-trial motions. However, the question of Lang's identification was raised in post-trial motions.

■ The Commonwealth cites *Commonwealth v. Frazier,* 467 Pa. 505, 359 A.2d 390 (1975) for the proposition that defendant waived his rights because of failure to object. However, once a question is asked, an objection made and sustained a request for an exception is no longer necessary as the exception is granted automatically. In *Frazier,* supra, the issue involved cutting off examination of reputation witnesses. The questioning there was outside the scope of cross-examination. Four Justices concurred and in the Con-

curring Opinion of Justice Roberts it is pointed out that the long abandoned formality of requesting an exception should not be revived. *Commonwealth v. Bronaugh*, 459 Pa. 634, 331 A.2d 171 (1975) cited by the Commonwealth stands for the proposition that matters not raised in post-trial motions are waived.

We agree that the Suppression Judge erred in cutting off counsel's cross-examination of Lang but the trial testimony indicates sufficient evidence of identification even without Lang's testimony. As Judge DiBona points out: "Sgt. Lang's identification was not tainted in any way. In accordance with *Commonwealth v. Fowler*, 466 Pa. 198, 352 A.2d 17 (1976) the identification was certainly permissible and properly testified to at trial."

We hold that the cutting off of cross-examination at the suppression hearing was error, but under all circumstances present in this case, was harmless error.

Judgment of sentence affirmed.

JACOBS, President Judge, and HOFFMAN and PRICE, JJ., concur in the result.

SPAETH, J., dissents.

WATKINS, former President Judge, did not participate in the consideration or decision of this case.