432 A.2d 228

COMMONWEALTH of Pennsylvania, Appellant,

v.

Thomas C. LONG.

Superior Court of Pennsylvania.

Submitted Sept. 11, 1980.

Filed July 10, 1981.

Petition for Allowance of Appeal Denied Sept. 28, 1981.

Steven H. Goldblatt, Deputy District Attorney, Philadelphia, for Commonwealth, appellant.

Elaine DeMasse, Assistant Public Defender, Philadelphia, for appellee.

Before WICKERSHAM, HOFFMAN and VAN der VOORT, JJ.

WICKERSHAM, Judge:

The Commonwealth contends that the lower court erred in concluding that the time for commencing appellee's trial was improperly extended pursuant to Pa.R.Crim.P. 1100(c). We agree and, accordingly, reverse the order of the lower court.

The defendant, Thomas C. Long, was convicted on September 26, 1979, of arson, endangering persons and property, burglary, and risking catastrophe after trial before the Honorable Lois G. Forer of the Court of Common Pleas of Philadelphia County, sitting without a jury. On January 24, 1980, Judge Forer granted defendant's post-verdict motion in arrest of judgment, ruling that defendant's prompt trial rights under Pa.R.Crim.P. 1100 had been violated. From this decision, the Commonwealth appealed.

The relevant procedural history of this case is as follows. On January 1, 1979, a complaint was filed against defendant charging him with various offenses stemming from his participation the night before in the destruction by fire of the house of Richard and Yvonne Kelly and their three young sons, Tyrone, Victor, and Kunta Kinta, at 204 West Glenwood Avenue in Philadelphia. The Commonwealth thus became obligated under Rule 1100 to bring defendant to trial by July 2, 1979. On January 17, 1979, after a preliminary hearing, defendant was held for court on the aforestated charges, and on February 8, 1979, his case was initially scheduled for trial on May 7, 1979. At the May 7th listing, however, and at the three subsequent trial listings for the case within the original Rule 1100 period of limita-

tion, May 31, June 27 and July 2, 1979, trial was continued because of the unavailability of Tyrone Kelly, the only eyewitness to the incident at issue.[1]

Tyrone, who was eight years old, had been sent at some time after defendant's preliminary hearing to live with his grandmother in Memphis, Tennessee. Frustrated in its repeated efforts to secure Tyrone's presence in Philadelphia, the Commonwealth, on June 29, 1979, timely filed a petition to extend the time for the commencement of defendant's trial, pursuant to Rule 1100(c). On July 10, 1979, an extensive evidentiary hearing on the petition was held before the late Honorable Merna B. Marshall. On July 11, 1979, Judge Marshall, after finding that the Commonwealth had been duly diligent, albeit unsuccessful, in trying to secure Tyrone's return to Philadelphia so that defendant's trial could commence before the mechanical rundate, extended the time for trial to October 1, 1979. The Commonwealth subsequently invoked legal process to secure Tyrone's return from Memphis[2] and defendant was brought to trial before Judge Forer on September 26, 1979.

At trial, Tyrone Kelly testified that on December 31, 1978, after his parents had left the Kellys' house to attend a New Year's Eve party defendant came to the house, broke the window in the front door and let himself in, threatened to kill young Tyrone and his brothers, and set fire to the living room couch. As a consequence, the entire house was eventually destroyed. Expert testimony established the incendiary origin of the fire.

The only question in this case is whether, at the evidentiary hearing before Judge Marshall, the Commonwealth estab-

1. Only Tyrone and his two younger brothers were at home when defendant set the Kelly house on fire, and Victor and Kunta Kinta were apparently too young to be qualified to testify (R. 27a).

2. Specifically, the Commonwealth proceeded under the Uniform Act to Secure the Attendance of Witnesses from Within or Without a State in Criminal Proceedings, 42 Pa.C.S. § 5961 et seq., formerly 19 P.S. § 622.1 et seq.

lished by a preponderance of the evidence that it could not have brought defendant to trial before his Rule 1100 mechanical rundate, despite its due diligence. *See Commonwealth v. Ehredt*, 485 Pa. 191, 401 A.2d 358 (1979). Judge Marshall who heard and evaluated the testimony, answered this question in the affirmative, but Judge Forer reached the opposite result at the post-verdict stage. There is no question (1) that the cause for the delay in the start of defendant's trial was the unexpected move of Tyrone Kelly, a vital Commonwealth witness, from Philadelphia to Memphis, Tennessee, or (2) that the Commonwealth had tried to return Tyrone to Philadelphia so that defendant's trial could commence before the original rundate. Judge Forer reversed the finding of due diligence because of the way in which the Commonwealth sought to secure Tyrone's return to the jurisdiction for defendant's trial.[3]

**3.** As for the first trial listing, on May 7th: The Commonwealth learned of Tyrone's move to Memphis on May 4th, only three days before the listing. At that time, Tyrone's mother, Mrs. Kelly, assured the prosecutor then assigned to the case that Tyrone would be back in Philadelphia by the end of May, and the prosecutor, therefore, had the case continued to May 31st. As for the second trial listing on May 31st: A week before it, in trying to check with Mrs. Kelly about Tyrone's availability, the prosecutor learned that Mrs. Kelly herself, along with the rest of her family, had gone to live in Memphis with Tyrone. His four or five attempts over the next six days to contact the Kellys in Memphis at a telephone number provided by Mrs. Kelly's sister, his only link with the Kellys, all failed, and he, therefore, had to have the case continued again to June 27th (R. 22a–37a, 45a–49a, 56a–58a). Between May 31st and June 27th, the record shows that the Commonwealth attempted to notify Tyrone of the June 27th trial date by calling the telephone number in Memphis and by contacting Mrs. Kelly's sister. (R. 58a–61a, 72a–77a). The Commonwealth also sent subpoenas to several addresses which included: Tyrone's residence before the fire, the residence of Mrs. Kelly's sister, and the address where Tyrone was currently staying in Memphis. (R. 25a, 62a). The subpoenas which were sent to Memphis were returned with a notation that the address was insufficient. (R. 62a–63a). Finally, the Commonwealth received an assurance from Mrs. Kelly's sister that Tyrone would come to Philadelphia by bus for the trial (R. 77a–78a), but Tyrone failed to appear on the June 27th trial date. (R. 78a–79a). As for the fourth listing, on July 2nd, defendant's rundate: The Commonwealth was unable to contact either the Kellys in Memphis or Mrs. Kelly's sister, who lived in Philadelphia, at any time during the period between the preceding trial listing and this listing (R. 79a).

■ Certainly, the standard of review for determining whether the Commonwealth was duly diligent in trying to secure the presence of an absent defendant applies with equal force and authority where the issue is whether the Commonwealth was duly diligent in trying to secure the presence of an absent witness. See *Commonwealth v. Hughes*, 256 Pa.Super. 105, 110–11, 389 A.2d 623, 625–26 (1978). In reviewing the application of this standard by lower courts, the supreme court has unequivocally condemned those lower courts who have second-guessed the methods used by the Commonwealth. *See Commonwealth v. Mitchell*, 472 Pa. 553, 566, 372 A.2d 826, 832 (1977). As long as the Commonwealth acted reasonably, in light of the facts and circumstances as they appeared at the time, the Commonwealth acted with "due diligence," even if it appears in hindsight that there were other, possibly more desirable or efficacious methods that might have been tried. *Commonwealth v. Hinton*, 269 Pa.Super. 43, 48–52, 409 A.2d 54, 57–58 (1979) (Petition for Allowance of Appeal Denied December 10, 1979).

■ We conclude, therefore, that the Commonwealth acted reasonably and with due diligence; consequently, we find that the lower court's determination to the contrary was erroneous and must be reversed, and the case remanded for consideration of defendant's motion for a new trial.

REVERSED AND REMANDED, WITH DIRECTIVES

HOFFMAN, J., dissents.