457 A.2d 925

**COMMONWEALTH of Pennsylvania**

v.

**Charles THOMPKINS, Appellant.**

Superior Court of Pennsylvania.

Argued Feb. 25, 1982.

Filed Feb. 25, 1983.

Petition for Allowance of Appeal Denied May 16, 1983.

358

Marilyn J. Gelb, Philadelphia, for appellant.

Sarah B. Vandenbraak, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before CERCONE, P.J., and CAVANAUGH, ROWLEY, WIEAND, McEWEN, CIRILLO and MONTEMURO, JJ.

MONTEMURO, Judge:

Following a jury trial, appellant was found guilty of burglary,[1] robbery,[2] and conspiracy.[3] Post-verdict motions were denied by the learned and distinguished trial judge, Honorable Angelo A. Guarino, and appellant was sentenced to a term of ten (10) to twenty (20) years imprisonment on the robbery conviction, ten (10) to twenty (20) years concurrent imprisonment on the burglary conviction and five (5) to ten (10) years concurrent imprisonment on the criminal conspiracy conviction. Appellant raises several allegations of trial error on this appeal. We find no merit in any of these issues and accordingly affirm.

On the evening of October 31, 1977, Mrs. Ella Woodley, 72 years of age, allowed three young black men into her house. She initially permitted them to enter her home because she recognized John Plummer, one of appellant's codefendants. Immediately after the entry, the men announced "this is a stick-up." One of the men grabbed Mrs. Woodley, and told her that if she made a noise he would hit her, and the other two took various personal items from the house. They then locked Mrs. Woodley in a powder room in the basement and left. Approximately a half-hour later,

1. 18 Pa.C.S.A. § 3502.

2. 18 Pa.C.S.A. § 3701.

3. 18 Pa.C.S.A. § 903.

she freed herself and called the police. The police, after receiving a description of the hold-up men from Mrs. Woodley, brought several black males back to her residence. She identified two of them as the perpetrators of the crime.

Appellant initially contends that a Commonwealth petition for an extension of the Rule 1100 rundate was improperly granted and that he, therefore, should be discharged. The rundate was May 1, 1978, and the trial was first scheduled for February 28, 1978. The trial was postponed until April 10, 1978 at the request of co-defendant's counsel. Although Mrs. Woodley had told an assistant district attorney on the telephone that she would appear at trial, she, nevertheless, did not appear. A bench warrant was issued for her the following day. An investigatory detective discovered that she was in North Carolina attending a funeral and would return on April 22, 1978. The detective again tried to contact her at her residence on April 24, but was told that she had not as yet returned. The detective contacted the post office, the utility company and neighbors and ascertained that Mrs. Woodley still lived at the Philadelphia address. The Commonwealth filed a petition on April 27, 1978, for an extension of the rundate alleging due diligence in attempting to bring appellant to trial. The issue therefore is whether the Commonwealth proved due diligence at the extension hearing held on April 28, 1978.

The Commonwealth has the burden of proving due diligence by a preponderance of the evidence. *Commonwealth v. Ehredt,* 485 Pa. 191, 401 A.2d 358 (1979). When the Commonwealth seeks an extension of the rundate to secure the presence of a missing witness, the test is whether the methods of procuring the witness were reasonable under the circumstances of the case at that time. *Commonwealth v. Long,* 288 Pa.Super. 414, 432 A.2d 228 (1981). It is not necessary that all methods be exhausted. *Commonwealth v. Long,* id. From the above recitation of the circumstances surrounding the extension of the trial date, it is clear that the Commonwealth made more than a reasonable effort to produce Mrs. Woodley before May 1, 1978.

The trial court was therefore correct in concluding that the Commonwealth was duly diligent and in consequently granting the extension.

■ Appellant next contends that the trial court erred at the suppression hearing by denying appellant's request to produce the complaining witness to testify concerning probable cause for the arrest and the on-the-scene identification [4]. Appellant alleges that the presence of the complaining witness is necessary to effectively determine the propriety of the on-the-scene identification. Furthermore, he contends that under *Commonwealth v. Lee,* 262 Pa.Super. 280, 396 A.2d 755 (1978), the presence of the complaining witness is mandatory regardless of the quantity and quality of the other testimony produced at the hearing.

In *Commonwealth v. Lee, id.,* the court stated:

Here, the Commonwealth's failure to have the complainant testify, not only concerning her observation of her attacker, but also concerning her own view of the identification procedure, left the hearing judge without evidence essential to the issue of admissibility. Accordingly, the Commonwealth failed to meet its burden of proof. *Id.,* 262 Pa.Superior at 288, 396 A.2d at 758.

The court, after deciding that the trial court erred in denying the suppression motion, then proceeded to justify the admissibility of the testimony relating to the on-the-scene identification by an examination of the entire record. The court, after concluding that the identification was proper, continued,

Our decision here to decide the admissibility of the identification on the basis of a review of the entire record should not be understood as meaning that we shall undertake such a review in another case ... In deciding admissibility, the hearing judge *must* hear testimony of the identifying witness; if the Commonwealth fails to

4. The trial judge states in his opinion that appellant raised this theory for the first time post-trial therefore waiving the issue. An examination of the record belies this conclusion.

produce the witness, the identification should be suppressed. *Id.*, 262 Pa.Superior at 289, 396 A.2d at 759.

The *Lee* court, while deciding the case on another ground, enunciated a *per se* rule as to the production of the identifying witness.[5] That rule places the burden on the Commonwealth to produce that witness and if they fail to so produce, then the identification should be suppressed.

The Commonwealth contends that the relevant language in *Lee* is *dictum* because the case was decided on other grounds. We disagree with this contention,[6] but decline to follow the dictates of *Lee*.

Today we hold that the presence of an identifying witness at a hearing to suppress a pre-trial on-the-scene identification is not mandatory. The *per se* rule enunciated in *Lee* is therefore overruled.

Even though the observations of an identifying witness are important considerations at a suppression hearing, this testimony is not constitutionally mandated:

> In essence, what the Stovall due process right protects is an evidentiary interest ... It is part of our adversary system that we accept at trial much evidence that has strong elements of untrustworthiness—an obvious example being the testimony of witnesses with a bias. While identification testimony is significant evidence, such testimony is still only evidence, and unlike the presence of counsel, is not a factor that goes to the very heart—the "integrity" of the adversary process.

*Manson v. Brathwaite*, 432 U.S. 98, 113, 97 S.Ct. 2243, 2252, 53 L.Ed.2d 140, 153 (1977).

▆▆▆ Finding no constitutional mandate for the presence of the identifying witness, we next turn to the ability of the Commonwealth to meet its burden at the suppression hearing without producing that witness. The essential criteria

5. Of course, in the case before us, the complaining witness is also the identifying witness.

6. See *Commonwealth v. Almeida*, 362 Pa. 596, 603, 68 A.2d 595, 599 (1949), *In re Pew's Estate*, 411 Pa. 96, 104, 191 A.2d 399, 404 (1963).

in determining whether or not evidence of pre-trial identification is admissible is its *reliability* under all of the circumstances disclosed by the record. The question for the suppression court is whether the challenged identification has sufficient indicia of reliability to warrant its admission even though the confrontation procedure may have been suggestive.[7] *Manson v. Brathwaite, supra.* The following factors are to be taken into consideration:

> ... the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation. Against these factors is to be weighed the corrupting effect of the suggestive identification itself.

*Manson v. Brathwaite, supra* at 114, 97 S.Ct. at 2253, 53 L.Ed.2d at 154.

In the case at hand, the facts brought out at the suppression hearing show that the evidence of the on-the-scene confrontation between appellant and his victim, and her identification of him at that time is sufficiently reliable to support the trial court's conclusion. The identifying witness viewed appellant inside her home for a period in excess of ten minutes. She gave a detailed description of appellant and two accomplices.[8] Appellant was brought back to the scene within an hour of the incident. Not only did she identify appellant, but she noted that he had exchanged

7. It should be emphasized that exclusionary rules are designed to prohibit improper police conduct. *U.S. v. Matlock,* 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242. The exclusion of identification testimony is proper when improper police conduct results in an impermissible suggestive confrontation. The *primary* focus is on police action. See *Manson v. Brathwaite, supra.* (Emphasis supplied).

8. (1) Negro male, medium complexion, 21 years of age, six foot tall, 230 pounds, medium bush hair, a brown hat, dark pants, brown trench coat, heavy mustache.
   (2) Negro male, dark complexion, 25 years old, 5'6", 145 pounds, black hat with wide brim, dark brown leather maxicoat.
   (3) Negro male, medium complexion, 20 to 25 years, 5'6", 145 pounds, dark hat, light pants, a black waist-length leather coat, earring in left ear.

coats with one of his co-conspirators. She picked out two men, and exonerated two others.

Further, whatever suggestiveness inhered in the procedural aspects of the pre-trial identification clearly did not outweigh its reliability. The record indicates no element of unfairness. Appellant was free to cross-examine the police officers and to take the stand to dispute this testimony. Without any indicia of unfairness, we conclude that the suppression motion was properly denied.[9]

■ Appellant next contends that the trial court erred in failing to charge the jury according to *Commonwealth v. Kloiber*, 378 Pa. 412, 106 A.2d 820 (1954). *Kloiber* stands for the proposition that:

> ... where a witness is not in a position to clearly observe the assailant or he is not positive as to identity, or his positive statements as to identity are weakened by qualifications or by failure to identify defendant on one or more prior occasions, the accuracy of the identification is so doubtful that the court should warn the jury that the testimony must be received with caution. *Id.*, 378 Pa. at 424, 106 A.2d at 826–27.

At trial, Mrs. Woodley testified that she positively identified two men on the night of the incident but could not testify to a certainty that appellant was one of the men she had previously identified. She stated that the man she had previously identified had different facial hair. The thrust of her testimony indicated that she was having problems remembering the incident.

■ We first note that a trial judge need not give an applicable charge verbatim. *Commonwealth v. Bishop*, 472 Pa. 485, 372 A.2d 794 (1977).

9. In *Commonwealth v. Nelson*, 488 Pa. 148, 411 A.2d 740 (1980), Justice Larsen, dissenting, commenting on *Commonwealth v. Lee, supra*, recognized the unavailability of a witness as a possible exception to a *per se* exclusionary rule. While herein we are disclaiming a *per se* rule, we in no way encourage the absence of an identifying witness, and recognize that in many cases such an absence could be fatal to the Commonwealth's burden.

In *Commonwealth v. Boone,* 286 Pa.Super. 384, 428 A.2d 1382 (1981), our court was faced with a similar allegation concerning a defective *Kloiber* charge. In that case, the court upheld the lower court charge which, when viewed on a whole, substantially, covered the substantive provisions of *Kloiber.*

The identification charge in the case at hand was proper for these same reasons. The trial judge, in an extensive and scholarly charge, instructed the jury that as a statement of fact, there was *no* in-court identification by Mrs. Woodley. They were therefore instructed that they could only use evidence of the previous identification. The judge then reiterated the various factors that the jury should consider in determining the accuracy of an out-of-court identification. Therefore, we conclude that, while the trial judge did not use the exact wording of *Kloiber,* his instructions actually exceeded the requirements of that case.

■ Appellant contends that the trial judge committed an abuse of discretion in interfering with counsel's examination of defense witness Russell Kolim. Mr. Kolim was a private investigator who sought to testify concerning a conversation he had with Mrs. Woodley. We find this claim wholly without merit.

In *Commonwealth v. Brown,* 438 Pa. 52, 265 A.2d 101 (1970), the court stated, "It is always the right and sometimes the duty of a trial judge to interrogate witnesses, although, of course, the questioning from the bench should not show bias or be unduly protracted." *Id.,* 438 Pa. at 63, 265 A.2d at 107, quoting from *Commonwealth v. Watts,* 358 Pa. 92, 56 A.2d 81 (1948). In the case at hand, the trial judge properly intervened to clarify the responses of Mr. Kolim for the jury. The sought after testimony was eventually elicited and we see no prejudice resulting from the guidance of the trial judge. We conclude that there was no abuse of discretion.

■ Appellant lastly argues that the trial judge erred in not charging on Count Two of Bill of Information 816,

which charged appellant with robbery, alleging that appellant threatened the crime of aggravated assault during that robbery.[10] This charge was not necessary. The Commonwealth never moved to trial on that Count of the Information. We fail to see how appellant could be prejudiced when an additional felony was omitted from the jury's consideration. There was no error.

For the foregoing reasons, Judgment of Sentence is affirmed.

CERCONE, P.J., files dissenting opinion.

CERCONE, President Judge, dissenting:

I dissent.

The majority holds (1) that the presence of the sole identifying eye-witness at a hearing on a motion to suppress a pre-trial on-the-scene identification is not mandatory, (2) that the absence of such a witness does not alone warrant suppression of the witness's identification, and (3) that a third party, in this case, police officers, who were not eye-witnesses, may testify as to the sole eye-witness's statement of identification. Because I feel that fundamental fairness under due process guarantees requires the presence of such a witness, and especially in this case since the absent eye-witness was the sole witness against appellant, I would order a new suppression hearing and trial, if necessary, in compliance with *Commonwealth v. Lee*, 262 Pa.Superior Ct. 280, 396 A.2d 755 (1978). Identification testimony offered by officers at a suppression hearing on the basis of what they learned from an absent and sole eye-witness is hearsay and, under the dictates of fairness, inadmissible as evidence.

An accused person is entitled to a pre-trial evidentiary hearing to determine the admissibility of pre-trial identifications. *Commonwealth v. Lee*, supra. At the suppression

10. Appellant raised one more issue in his Statement of Questions. This issue was not addressed in the argument portion of his brief. It is therefore waived. *Commonwealth v. Jackson*, 494 Pa. 457 n.1, 431 A.2d 944 n. 1 (1981).

hearing, the burden of the production of evidence is on the Commonwealth. *Commonwealth ex rel. Butler v. Rundle*, 429 Pa. 141, 239 A.2d 426 (1968). As this court said in *Commonwealth v. Perdie*, 249 Pa.Superior Ct. 406, 409, 378 A.2d 359, 361 (1977), citing *Commonwealth v. Turner*, 454 Pa. 520, 523, 314 A.2d 496, 498 (1974):

> Evidence of an identification should not be received at trial if the circumstances of the pre-trial confrontation were so infected by suggestiveness as to give rise to an irreparable likelihood of misidentification. (citations omitted.) However, absent some special elements of unfairness, we do not believe that prompt on-the-scene confrontations fall within this ambit of suggestiveness.

The police are not competent to testify for an absent sole identifying witness and any such procedure is replete with the danger of the uncertain premise of unsubstantial identification. As our Supreme Court has said,

> [I]t may be that the procedure used by the police was conducted with such fundamental unfairness as to result in a deprivation of due process of law. *Stovall v. Denno*, 388 U.S. 293, 87 S.Ct. 1967 [18 L.Ed.2d 1199] (1967). This is a recognized ground of attack, independent of any right of counsel claim. In resolving this question, all of the circumstances must be considered and the test is whether or not 'the confrontation was so unnecessarily suggestive and conducive to irreparable mistaken identification...' as to constitute prejudicial unfairness. *Stovall v. Denno*, *supra.* *Commonwealth v. Marino*, 435 Pa. 245, 253, 255 A.2d 911, 916 (1969).

In essence, the reliability of the confrontation is what must be determined by the suppression court. *Manson v. Brathwaite*, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977). Thus, in ascertaining the reliability of the confrontation procedure, reviewing courts have placed great emphasis on the testimony of an identifying witness as part of the Commonwealth's burden.[1]

---

1. See also *Commonwealth v. Jackson*, 227 Pa.Superior Ct. 1, 323 A.2d 799 (1974) (In the photo array situation, actual array must be dis-

In *Commonwealth v. Turner*, 454 Pa. 520, 314 A.2d 496 (1974), the court found the on-the-scene confrontation to be reliable such that it could be introduced at trial. The defendant was apprehended near the scene of a robbery by police responding to a broadcast. He was driven two blocks so that the victim-cabdriver could observe him. Placing great weight on the cabdriver's suppression testimony that "They asked me were these the two fellows. And I said, yes," the court affirmed the denial of suppression.

In *Commonwealth v. Alvin*, 257 Pa.Superior Ct. 290, 390 A.2d 827 (1978) this court found that the trial court erred during the suppression hearing in refusing to allow defense counsel to cross-examine an identifying witness on his ability to observe the defendant at the scene of the crime. While this court found such error harmless, it relied heavily on the strong evidence presented at trial in the case.

> ... Sgt. Lang testified that his identification was based solely on the events of the day of the robbery and was not influenced by one-on-one confrontations at the police station. His testimony was unshaken on cross-examination... Both witnesses positively identified the defendant in court. Both testified that their identifications were based on the happenings when the crime was committed.

*Id.*, 257 Pa.Superior at 297, 390 A.2d at 830.

In the instant case, the police witnesses at the suppression hearing portrayed a one-on-one on the scene identification based on the testimony of the absent and sole eye-witness, Ms. Woodley, the victim in this case. Ms. Woodley's absence at the suppression hearing deprived appellant's counsel of the opportunity to hear her version of the procedure and to cross examine her. Certain facts became known at trial which would have raised proper questions by appellant's counsel at the suppression hearing, which had been held four days earlier. Ms. Woodley testified at trial

played at the suppression hearing.); *Commonwealth v. Hodge*, 246 Pa.Superior Ct. 71, 369 A.2d 815 (1977) (Photo identification inadmissible if Commonwealth fails to produce photographs at suppression hearing.)

that after the preliminary hearing in this case, she went home and pondered about whether she identified the right man in identifying appellant. The preliminary hearing was held sixteen days after the robbery. Appellant had grown facial hair by that time and this fact made Ms. Woodley uncertain about whether she had made a mistake.

In addition, while the police testified that to their collective knowledge, they brought back four suspects for Ms. Woodley's identification, Ms. Woodley testified that she viewed between six and twelve subjects. Had Ms. Woodley been present at the suppression hearing, counsel for the Commonwealth and for appellant could have elicited from her the particular circumstances of the robbery, that is, her ability to view appellant, how long the intruders stayed in her house, and her confidence in identifying appellant at that time. She would also have been able to convey her side of the one-on-one confrontations.

As the record stands, this invaluable information from the victim was not presented to the suppression court. And, more importantly, the defense attorney was not afforded the opportunity to cross examine the victim as to the confrontation procedure.

My consideration of this case convinces me that, following the guidance of *Commonwealth v. Lee, supra,* the Commonwealth did not meet its burden of proof at the suppression hearing. "At a hearing on a motion to suppress an 'on the scene' identification it is essential that the identifying witness testify." *Id.* 262 Pa.Superior Ct. at 286, 396 A.2d at 757. While it is true that in the *Lee* case, this court chose to determine without a new hearing whether the identification was reliable, I feel that the facts of this case do not warrant such a review.[2] Rather, appellant must be offered a new suppression hearing, and, if necessary, a new trial. When a defendant challenges the on-the-scene

2. Ms. Woodley, the victim, would not identify appellant, had signed a statement two weeks previous that she would 'not prosecute' appellant, and while she unequivocally identified appellant's co-defendant, she indicated her fear of prosecuting the wrong person in appellant.

identification procedures involved in his case, it is incumbent on the Commonwealth, as essential to its burden of proof, to produce the only person who suffered the harm, and the only eye-witness to the crime, who alerted police, and who subsequently identified the defendant when he was brought back to the place in which the criminal incident occurred. Failure to do this should result in suppression of the identification. And for this reason, I respectfully dissent from the opinion of the majority.

This case should be remanded for a new suppression hearing and, if necessary, a new trial.