502 A.2d 246

**COMMONWEALTH of Pennsylvania, Appellee,**

**v.**

**Michael Edwin JOHNSON, Appellant.**

Superior Court of Pennsylvania.

Submitted May 13, 1985.

Filed Dec. 20, 1985.

Richard E. Bower, Assistant Public Defender, Uniontown, for appellant.

Gerald R. Solomon, District Attorney, Uniontown, for Commonwealth, appellee.

Before SPAETH, President Judge, and ROWLEY and WIEAND, JJ.

WIEAND, Judge:

In this appeal from a sentence of imprisonment imposed following convictions for robbery, theft and criminal conspiracy, Michael Edwin Johnson's principal contention is that he was not tried within the time constraints of Pa.R. Crim.P. 1100(e)(1). Finding no merit in this contention or in any of the arguments advanced by appellant for a new trial,[1] we affirm.

Johnson was arrested on January 4, 1983. His trial began on August 1, 1983. However, on August 2, 1983, a mistrial was declared because the jury was unable to agree upon a verdict. On December 20, 1983, after hearing, the trial court granted a timely request by the Commonwealth for an extension of time under Rule 1100 because the victim, Lyle Reynolds, had been ill and unavailable for trial when the case had been scheduled for trial in November. On February 21, 1984, another extension was granted because the victim was still ill. On March 6 and 7, 1984,

---

1. These arguments are that the verdict was against the weight of the evidence; that the trial court erred in permitting rebuttal evidence to contradict appellant's testimony; that the prosecutor was guilty of misconduct; and that the trial court's jury instructions contained error. They have been fully discussed and correctly decided by the trial court and require no further discussion in this opinion.

within the extension allowed by the court, appellant was tried by jury and convicted.

Appellant argues that the trial court erred in granting the several Commonwealth requests for extensions. He contends that at both hearings the court improperly allowed hearsay evidence of the victim's illness. In the absence of this hearsay, he suggests, the Commonwealth failed to prove that it was unable to commence trial within the prescribed period by the exercise of due diligence.

At the first extension hearing, Trooper James Anthony was the only witness to testify. He testified that he had been in contact with the victim, Lyle Reynolds, and had been told that he was ill and could not appear for trial. (N.T. 12/20/83 at 2, 4). Trooper Anthony testified that he had also gone to the office of Reynolds' physician and had obtained letters, signed by the doctor, confirming that Reynolds was ill and could not appear for trial. Defense counsel objected to this testimony on grounds that it was hearsay. (N.T. 12/20/83 at 3). The court allowed Trooper Anthony to testify to what the letters said and admitted the letters into evidence as business records. (N.T. 12/20/83 at 5-6, 7). Appellant argues that Trooper Anthony's testimony and the doctor's letters were hearsay and should not have been received.

At the second hearing, Trooper Anthony testified that he had again spoken to Reynolds, who told him that he was still ill and unable to attend a trial. The trooper testified that he again went to the doctor's office and obtained a letter, signed by the doctor, stating that Reynolds was ill and unable to appear. This time the court ruled that the letter was inadmissible as hearsay. (N.T. 2/21/84 at 6). Nevertheless, the extension was granted.

■ The Commonwealth had the burden of proving the exercise of due diligence by a preponderance of the evidence. See: *Commonwealth v. Ehredt*, 485 Pa. 191, 194, 401 A.2d 358, 360 (1979); *Commonwealth v. Bulling*, 331

Pa.Super. 84, 90, 480 A.2d 254, 257 (1984); *Commonwealth v. Lamb,* 309 Pa.Super. 415, 423, 455 A.2d 678, 682 (1983).

[T]he due diligence required of the prosecutor by Rule 1100 has been interpreted to mean that the Commonwealth must exert *reasonable* efforts to provide for the trial to commence within [the prescribed period]. "The test in determining whether the Commonwealth acted with due diligence is one of reasonableness under the circumstances."

*Commonwealth v. Dancy,* 317 Pa.Super. 578, 582, 464 A.2d 473, 475 (1983), quoting *Commonwealth v. Wroten,* 305 Pa.Super. 340, 345, 451 A.2d 678, 681 (1982) (emphasis in original). See also: *Commonwealth v. Tann,* 298 Pa.Super. 505, 507–508, 444 A.2d 1297, 1298 (1982); *Commonwealth v. Long,* 288 Pa.Super. 414, 419, 432 A.2d 228, 231 (1981).

■ Appellant is correct when he argues that the letters from the doctor were inadmissible to prove the truth of the facts recited therein. Writing letters to district attorneys is not a part of the ordinary course of a physician's business. Therefore, the letters in question did not qualify as business records and should not have been received as substantive evidence of the victim's illness. See: 42 Pa.C.S. § 6108. Cf. *Commonwealth v. Garcia,* 478 Pa. 406, 426, 387 A.2d 46, 56 (1978) (letter written by superintendent of mental hospital to court not a business record because writing letters to judges not done by hospital in ordinary course of business).

■ However, the issue in this case was not primarily the truth of the victim's assertion and the doctor's confirmation that the victim had been ill but whether the Commonwealth had exercised due diligence to commence trial within the time allowed by Rule 1100. With respect to this issue, it was relevant and proper to show that Trooper Anthony had attempted to have Reynolds present for trial and had been told both by Reynolds and his physician that Reynolds could not testify at trial because of illness. The statements made by Reynolds and his physician were admissible, not to show

the truth of the statements made but to show that the Commonwealth had exercised due diligence. The statements were admissible to show that the Commonwealth had been unable to produce Reynolds for trial within 120 days after the prior trial had ended in a mistrial. Even if the facts recited by the witness and by his physician had been incorrect or even untrue, the witness' statement and the physician's letter were relevant to show that the Commonwealth's failure to commence trial in a timely manner was not attributable to a failure to exercise due diligence.

By the use of this evidence, the Commonwealth was able to prove that it could not commence trial within 120 days despite its exercise of due diligence. Its efforts to have the victim, an essential witness, present for trial were prevented by his statement that he was ill and could not appear. The Commonwealth did not rest upon the assertion of the witness, however, but went to the witness' physician in order to verify such illness. Only after confirmation by the witness' physician did the Commonwealth seek an extension of time within which to commence trial. The trial court, on the basis of this evidence, could properly grant the several Commonwealth requests for extensions. The Commonwealth's failure to issue a subpoena for Reynolds after he had alleged illness did not, in view of the circumstances of this case, suggest a lack of due diligence. See: *Commonwealth v. Dancy, supra* 317 Pa.Super. at 585, 464 A.2d at 477.

Appellant argues that even if Reynolds had been unavailable for trial, trial should have proceeded. Reynolds was not an essential witness, appellant argues, because the Commonwealth, in the event of his unavailability, could have used a transcript of the testimony which he gave at the first trial. The standard of due diligence, however, requires only that reasonable efforts be used by the Commonwealth to commence trial within the time allowed therefor. Numerous decisions have held that when witnesses become unavailable toward the end of the Rule 1100 period—whether because of illness, vacation or some other

reason—the Commonwealth is entitled to an extension. See: *Commonwealth v. Burke,* 344 Pa.Super. 288, 496 A.2d 799 (1985); *Commonwealth v. Williams,* 317 Pa.Super. 456, 464 A.2d 411 (1983); *Commonwealth v. Williams,* 310 Pa.Super. 501, 456 A.2d 1047 (1983); *Commonwealth v. Sharp,* 287 Pa.Super. 314, 430 A.2d 302 (1981); *Commonwealth v. Sinor,* 264 Pa.Super. 178, 183–184 n. 5, 399 A.2d 724, 727–728 n. 5 (1979). Rule 1100 was not intended to require the Commonwealth to exercise extraordinary efforts to commence trial within the time constraints of Rule 1100. The standard is reasonable diligence. The Commonwealth's evidence showed that trial was not commenced because of the witness' representation that he was ill. This had been confirmed by his physician. Under these circumstances, the Commonwealth's decision to wait until the witness could appear personally and testify in the presence of the jury was not equivalent to a lack of due diligence. Rule 1100, the Supreme Court has said, " ' "serves two equally important functions: (1) the protection of the accused's speedy trial rights, and (2) the protection of society." *Commonwealth v. Brocklehurst,* 491 Pa. 151, [153–154], 420 A.2d 385, 387 (1980); *Commonwealth v. Hamilton,* 449 Pa. 297, 297 A.2d 127 (1972). . . . The administrative mandate of Rule 1100 certainly was not designed to insulate the criminally accused from good faith prosecution delayed through no fault of the Commonwealth.' " *Commonwealth v. Crowley,* 502 Pa. 393, 399, 466 A.2d 1009, 1012 (1983), quoting *Commonwealth v. Genovese,* 493 Pa. 65, 69–70, 425 A.2d 367, 369–370 (1981). See also: *Commonwealth v. Hamm,* 325 Pa.Super. 401, 416, 473 A.2d 128, 136 (1984). Because the Commonwealth's inability to begin trial within 120 days of the prior mistrial was not caused by a lack of due diligence on the part of the Commonwealth, the trial court could properly extend the time for trial.

The judgment of sentence is affirmed.

SPAETH, President Judge, files a concurring and dissenting opinion.

362

SPAETH, President Judge, concurring and dissenting:

I agree with the majority's disposition of the Rule 1100 issue, but I believe that a new trial should be ordered because of the prosecutor's misconduct.

In the course of the prosecutor's summation, the following occurred:

MR. ZEGLEN: They have been found guilty in any event. However, I cannot pick and choose my witnesses. Sure, I would like to have law-abiding citizens as witnesses. The problem is that crimes usually aren't committed in front of law-abiding citizens. It is other criminals who see crimes committed. They are the ones who see the crimes. Robert Ahlborn and Scott Dunn, they are criminals. They have lied. The defendant, Michael Johnson, is their friend. What does that tell you about Michael Johnson? Ask yourselves that. Who do criminals associate with?

MR. BOWER: Objection.

THE COURT: Objection sustained. The jury will disregard that last statement.

MR. BOWER: Your Honor, may we approach the bench?

THE COURT: You may.

SIDEBAR DISCUSSION HELD ON THE RECORD

MR. BOWER: Your Honor, at this time, I think that is extremely prejudicial, and I would like a mistrial based on prosecutorial misconduct.

THE COURT: The Court does not feel that it is that prejudicial and with our cautionary instructions, we do not think that the motion is a proper motion, and we refuse it.

MR. BOWER: Thank you, Your Honor.

END OF SIDEBAR DISCUSSION

MR. BOWER: Your Honor, may we have a more explicit cautionary instruction on that?

THE COURT: I believe our instruction is sufficient.

N.T. 100–101.

The trial court acknowledges that these remarks "were improper and should not have been made," Slip Op. at 8, but goes on to say that they were not prejudicial, and that in any event, the court's cautionary instruction "cure[d] the impropriety," *id.* To the contrary, as defense counsel properly argued to the court, *see* quotation *supra,* and argues to us, Brief for Appellant at 27, the remarks were "extremely prejudicial."

Where prosecutorial misconduct is claimed, we must "determine whether the unavoidable effect of the contested comments was to prejudice the jury, forming in their minds fixed bias and hostility towards the accused so as to hinder an objective weighing of the evidence and impede the rendering of a true verdict." *Commonwealth v. Brown,* 489 Pa. 285, 297, 414 A.2d 70, 76 (1980); *Commonwealth v. McNeal,* 456 Pa. 394, 319 A.2d 669 (1974); *Commonwealth v. Goosby,* 450 Pa. 609, 301 A.2d 673 (1973). If the comments are found prejudicial, a new trial is required. *Commonwealth v. Gilman,* 470 Pa. 179, 192, 368 A.2d 253, 259 (1977).

It has consistently been held that the prosecutor must limit his remarks to the facts in evidence and to legitimate inferences from those facts. *Commonwealth v. Revty,* 448 Pa. 512, 516, 295 A.2d 300, 302 (1972). He may not "interject his personal beliefs as to either the guilt of the defendant or the credibility of a witness nor may he argue from facts which may be within his personal knowledge but which are not of record." *Commonwealth v. Joyner,* 469 Pa. 333, 365 A.2d 1233 (1976). Here, the prosecutor flagrantly violated these standards. Instead of relying on the evidence, he added the weight of his own assertion as counsel for the Commonwealth that the witnesses had "lied"; and instead of accepting the burden of proving the defendant's guilt, he invited the jury to find guilt by association—an invitation incompatible with the most fundamental provisions of our system of justice.

"Prosecutorial misconduct in argument is of special concern because of the possibility that the jury will give special weight to the prosecutor's arguments." *Commonwealth v. Kuebler,* 484 Pa. 358, 399 A.2d 116, 118 (1979) (quoting American Bar Association Standards Relating to the Prosecution Function, § 5–8 Commentary). In *Commonwealth v. Lipscomb,* 455 Pa. 525, 317 A.2d 205 (1974), it was held that the prosecutor's allusions to the defendant and his alleged associates as "hoodlums" and "animals" required a new trial. "Such expressions of personal belief," stated the court, "have no legitimate place in a district attorney's argument." *Id.,* 455 Pa. at 528, 317 A.2d at 207. *See also Commonwealth v. Joyner, supra,* 469 Pa. at 338, 365 A.2d at 1235 ("Calling the present defendant the 'leader of this pack of murderers,' of course, is the same thing as calling him a murderer directly; and if a murderer, then guilty."). *See generally Commonwealth v. Cronin,* 464 Pa. 138, 346 A.2d 59 (1975) ("a prosecuting attorney may not indulge in personal assertions of guilt of a defendant either by direct statement or indirectly by figure of speech").

As for the trial court's cautionary instruction: when a prosecutor makes remarks as egregious as those made here, the trial court should respond with a much firmer admonition than simply saying that "[t]he jury will disregard that last statement." So mild and general an instruction is likely to be understood by the jury as meaning that nothing very much wrong was said. In addition, and more important, the court's instruction was so incomplete as to be misleading. The court only instructed the jury to "disregard that last statement." The prosecutor, however, had made several statements, all improper. His "last statement" was, "Ask yourselves that. Who do criminals associate with?" Under the court's instruction the jury was free to consider as proper argument the prosecutor's other statements: that Ahlborn and Scott "are criminals. They have lied. The defendant, Michael Johnson, is their friend." Finally, it should be noted that defense counsel expressly

requested "a more explicit cautionary instruction", *see* quotation *supra,* but the court refused, *id.*

I submit that neither this court nor a trial court does service to the cause of justice by condoning such unprofessional argument as occurred here. We should order a new trial.