473 A.2d 1040

**COMMONWEALTH of Pennsylvania**

v.

**Irvin LEATHERBURY, Appellant.**

Superior Court of Pennsylvania.

Submitted Oct. 21, 1983.

Filed March 9, 1984.

Petition for Allowance of Appeal Denied July 11, 1984.

---

Howard S. Kaplan, Philadelphia, for appellant.

Jane Cutler Greenspan, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before SPAETH, President Judge, and WIEAND and MONTEMURO, JJ.

WIEAND, Judge:

Irvin Leatherbury was tried nonjury and convicted of robbery,[1] criminal attempt-theft,[2] simple assault[3] and criminal conspiracy.[4] Post-trial motions were denied, and a sentence of eighteen months to three years imprisonment was imposed for robbery. On direct appeal, Leatherbury contends that the evidence was insufficient to support the conviction, and that his speedy trial rights under Pa.R. Crim.P. 1100 were violated. In addition, he seeks a new trial based upon identification testimony of the victim which he alleges to be infirm because born of a suggestive pre-trial confrontation. Finding no merit in these contentions, we affirm.

> "The test of sufficiency of the evidence is whether, viewing the evidence in the light most favorable to the Commonwealth and drawing the proper inferences favorable to the Commonwealth, the trier of fact could reasonably have found that all of the elements of the crime [were] established beyond a reasonable doubt."

*Commonwealth v. Giles*, 500 Pa. 413, 415, 456 A.2d 1356, 1357 (1983), quoting *Commonwealth v. Pitts*, 486 Pa. 212,

1. 18 Pa.C.S. § 3701.

2. 18 Pa.C.S. §§ 901, 3921.

3. 18 Pa.C.S. § 2701.

4. 18 Pa.C.S. § 903.

215, 404 A.2d 1305, 1306 (1979). See also: *Commonwealth v. Biggs*, 320 Pa.Super. 265, 267, 467 A.2d 31, 32 (1983); *Commonwealth v. Todt*, 318 Pa.Super. 55, 60–1, 464 A.2d 1226, 1228 (1983); *Commonwealth v. Ruffin*, 317 Pa.Super. 126, 133, 463 A.2d 1117, 1118–1119 (1983); *Commonwealth v. Scarborough*, 313 Pa.Super. 521, 525, 460 A.2d 310, 312 (1983).

In the early morning hours of July 15, 1980, seventy-one year old Francis Mahoney was walking along a street in Philadelphia when appellant and another man approached from behind, one on each side, and grabbed his arms. They said, "Give me your wallet and give me your money." Mahoney "shook them off" and moved away, claiming he didn't have any money. After a moment or two, the men turned and began to walk away. When Mahoney began cursing at them, however, they turned and again approached him. When a police car appeared, Mahoney flagged it and told Officer Fadgen what had transpired. The police officer called appellant and his companion to the car and arrested them.

Under the Crimes Code in Pennsylvania,

"(1) A person is guilty of robbery if, in the course of committing a theft, he:

(i) inflicts serious bodily injury upon another;

(ii) threatens another with or intentionally puts him in fear of immediate serious bodily injury;

(iii) commits or threatens immediately to commit any felony of the first or second degree;

(iv) inflicts bodily injury upon another *or threatens another with or intentionally puts him in fear of immediate bodily injury;* or

(v) physically takes or removes property from the person of another by force however slight.

(2) An act shall be deemed 'in the course of committing a theft' *if it occurs in an attempt to commit theft* or in flight after the attempt or commission."

18 Pa.C.S. § 3701(a)(1) (emphasis added).

"A person is guilty of theft if he unlawfully takes, or exercises unlawful control over, movable property of another with intent to deprive him thereof."

18 Pa.C.S. § 3921(a).

"A person commits an attempt when, with intent to commit a specific crime, he does any act which constitutes a substantial step toward the commission of that crime."

18 Pa.C.S. § 901(a).

Here, there was sufficient evidence that appellant, in the course of an attempt to commit a theft, threatened the victim with or put him in fear of immediate bodily injury. When appellant and another young man came up behind this elderly man who was walking alone at 1:15 in the morning, grabbed him by both arms, and demanded his money and his wallet, the trier of the facts could infer that the young men intended to acquire the victim's money by placing him in fear of immediate bodily injury. Neither the fact that they did not inflict bodily injury nor that they were unsuccessful in obtaining the victim's money was controlling. An aggressive act intended to place the victim in fear that he was in danger of immediate physical harm was sufficient to elevate an attempted theft to robbery, 18 Pa.C.S. § 3701(a)(1)(iv). Whether the victim was in fact put in fear under such circumstances was not controlling. See: *Commonwealth v. Hurd*, 268 Pa.Super. 24, 29, 407 A.2d 418, 420 (1979); *In re Gonzales*, 266 Pa.Super. 468, 470, 405 A.2d 529, 530 (1979); *Commonwealth v. Mays*, 248 Pa.Super. 318, 321, 375 A.2d 116, 117–118 (1977).

A person is guilty of simple assault if he:

"(3) attempts by physical menace to put another in fear of imminent serious bodily injury." [5]

5. Serious bodily injury is defined as "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigure-

18 Pa.C.S. § 2701(a)(3). Although the victim in this case sustained no actual injuries, the circumstances under which he was accosted were sufficient to permit an inference that appellant intended by his conduct to put Mahoney in fear of imminent serious bodily injury. See: *Commonwealth v. Stumpo*, 306 Pa.Super. 447, 459, 452 A.2d 809, 815–816 (1982). Compare: *Commonwealth v. Scott*, 246 Pa.Super. 58, 369 A.2d 809 (1976).

Appellant was not deprived of a speedy trial as required by Pa.R.Crim.P. 1100. The criminal complaint was filed on July 15, 1980, thereby giving rise to a mechanical run date of January 12, 1981.[6] Appellant, although subpoenaed, failed to appear for a preliminary hearing on July 23, 1980. He was arrested on a bench warrant the following day. A bench warrant hearing was held on July 28, when the preliminary hearing was rescheduled for August 6, 1980. Appellant again failed to appear. A second bench warrant was issued, but it was withdrawn when it was discovered that appellant had failed to post bail and had remained in custody. A preliminary hearing was thereafter held on September 29, 1981 and, after the matter had been returned to court, an information was filed and appellant was arraigned. The first trial, scheduled for December 8, 1980, was continued because the Commonwealth lacked a witness and, therefore, was not ready to proceed. The second date set for trial was January 12, 1981, but on that date defense counsel was unavailable. Trial was postponed until March 9, 1981. The Commonwealth thereupon filed a petition requesting an extension of time within which to commence trial under Rule 1100. This petition was heard on February 17, when the court ruled that periods of five and fifty-six days were excludable because of the unavailability first of appellant and then his attorney. Pursuant to this ruling, the court added 61 days, and when the 61st day fell on a

ment, or protracted loss or impairment of the function of any bodily member or organ." 18 Pa.C.S. § 2301.

**6.** January 11 was the 180th day, but it was a Sunday.

Saturday, the court computed the revised run date to be March 16.

■ Appellant contends that the exclusion of five days because of his failure to appear for preliminary hearing was improper because it was based solely on record entries and was not supported by other evidence. There is no merit in this contention. See: *Commonwealth v. Harris*, 315 Pa. Super. 544, 553, 462 A.2d 725, 729 (1983). The record in this case showed, without dispute, that appellant had failed to appear on July 23, 1980 despite having had notice of his obligation to be present for preliminary hearing. Although the bench warrant was executed the following day and appellant thereafter remained in custody, the proceedings were not resumed until a bench warrant hearing was held on Monday, July 28. At that time a new preliminary hearing date was set for August 6 and new bail set at $1,500. At the very least, the five days intervening between appellant's failure to appear and the bench warrant hearing following his arrest were excludable.[7]

"[T]he period of excludable days is not necessarily measured by the length of time that a defendant was 'unavailable.' Instead, once it is determined that the defendant was unavailable, the critical inquiry is whether actual delay resulted from the defendant's unavailability. 'If the "unavailability" results in an actual delay in the proceedings, that delay is automatically excluded.'"

*Commonwealth v. Colon*, 317 Pa.Super. 412, 425, 464 A.2d 388, 395 (1983), quoting *Commonwealth v. Millhouse*, 470 Pa. 512, 517, 368 A.2d 1273, 1276 (1977). See also: *Commonwealth v. Robinson*, 498 Pa. 379, 386, 446 A.2d 895, 898–899 (1982); *Commonwealth v. Derrick*, 322 Pa.Super. 517, 530, 469 A.2d 1111, 1118 (1983); *Commonwealth v. Perry*, 296 Pa.Super. 359, 362, 442 A.2d 808, 810 (1982); *Commonwealth v. Chapman*, 271 Pa.Super. 473, 476, 414 A.2d 352, 353 (1979). Accord: *Commonwealth v. Manley*, 503 Pa. 482, 469 A.2d 1042 (1983).

7. Although appellant again failed to appear for preliminary hearing on August 6, no additional days were excluded because it was determined that he had been in custody, having failed to meet bail.

The events which occurred following the first extension hearing on February 17 were described by Eliot Present, Esquire, an assistant district attorney, during testimony given at the second extension hearing on March 25. He said:

"... this case was originally listed on March 9th, 1981, at which time the complainant was present, and a Motion to Suppress the facts and evidence was litigated. At the conclusion of that Motion to Suppress, after argument from both myself and the Public Defender, Judge Katz held the case under advisement. We—at that time, we realized that I believe the run date of the particular matter was March 16th of 1981. That was on March 9th, 1981. The case was continued until March 17th, 1981 and the Rule at that time was waived 'til March 17th, 1981 voluntarily by the defendant and the Public Defender.[8]

Later that afternoon, the judge informed me that he would not be sitting on March 17th, so, in order for the case to be heard before the run date, it would have to be listed on the 16th. At that time, the complainant had been served for the 17th, so I called him up later that afternoon and informed him that the case would now be listed on the 16th and would he please change his subpoena and come in that Monday. He had originally informed me that he worked 'til eight o'clock in the morning—

. . . .

He originally informed me that he would prefer it being on a Tuesday, which would be the 17th, because he worked until eight o'clock in the morning that morning on the 16th. I called him and pleaded with him and informed him that the judge wasn't sitting on the 17th and to come in on the 16th. He agreed to come in.

I believe it was later on that week, or it might have even been on the 9th, but it was some time before the end of the week—it was March 13th. Subsequently, on March 13th, as I was preparing these cases for March

8. Appellant argues that he did not waive Rule 1100. The record is clear, however, that appellant made an oral, informed waiver and, in addition, executed a written waiver of Rule 1100.

16th, I got a call from Public Defender Jonathan Miller, who was going to be in Courtroom 615 the week of the 16th with myself, and he called specifically to talk to me about the Leatherbury case. He informed me that his colleague, Mr. Laver, was specially assigned to that matter, so that he couldn't handle it.

He also informed me that Mr. Laver was on emergency assignment to Harbison and Levick on the 16th and there was a good possibility that he would be unavailable that day to come to court. He told me that he was under the impression that Mr. Laver was going to incorporate all of the testimony if the Motion to Suppress was denied, anyway, and that he thought, since Mr. Laver may not show up for court, that I should keep the witness on call.

I, subsequently, called the witness back. I said to him, in view of the fact that this defense attorney may not even be there and also in view of the fact that there was going to be a SEPTA strike, that since he had no other means of transportation—I didn't think the attorney was even going to be there—I would keep him on call. If we needed him, I would call him that day.

So I got to court on March 16th and early in the morning, Mr. Miller informed me that there was a good possibility Mr. Laver may be able to make it in; they had changed their mind; that he was going to call the courtroom later that morning.

He, subsequently, did call the courtroom and he informed us that he would probably be arriving at about two p.m.

At that time, even though I had an entire list of cases to conduct by myself, I managed to get a phone call to Mr. Mahoney, to tell him that he was—we were going to try and bring him in; that I was going to call the detectives in our office to bring him in and that someone was going to be coming to his house to get him.

I got someone in the court. I believe it was the crier got in touch with the detective and made all the appropriate arrangements to get out and pick this man up and bring him in.

They went out to his house and, apparently, when they rang the doorbell, he had been sleeping at the time. He had worked all night—

. . . .

Mr. Doyle told me that the complainant called him. Apparently, he heard the doorbell ring. He had been sleeping. By the time he got down to the front door, the detectives, who had a car full of people to take down to court, had left.[9] He had no other way to get to court, so that the case, in fact, was continued to the earliest possible date, and Mr. Laver, at that time, asked the judge to recuse himself, because Judge Katz denied their motion and he didn't think it would be appropriate for Judge Katz to even hear the trial at that point, so I don't believe the case could have gone on that day unless we could have found another courtroom, but, in any event, Mr. Laver did show up, asked the judge to recuse himself and the case was continued to the earliest possible date consistent with the court's business, which was March 26th, 1981."

After the trial had been assigned to another judge and continued until March 27, the Commonwealth, on March 17, filed a motion to extend the time to accommodate the new trial date. Judge Sporkin heard the extension petition on March 25 and found that the inability to commence trial on March 16 before Judge Katz had not been caused by a Commonwealth failure to exercise due diligence. Therefore, he granted an extension until March 27. Trial was held and completed on March 26.

■■■ The test for determining whether due diligence was exercised is one of reasonableness under the circumstances. *Commonwealth v. Wroten*, 305 Pa.Super. 340, 345, 451 A.2d 678, 681 (1982); *Commonwealth v. Long*, 288

---

**9.** This evidence was objected to as hearsay, but the hearing court overruled the objection and received the evidence. This ruling and the alleged hearsay evidence have not been challenged on appeal. The objection to the evidence, therefore, has been waived. See: *Commonwealth v. Harper*, 292 Pa.Super. 192, 436 A.2d 1217 (1981).

Pa.Super. 414, 419, 432 A.2d 228, 231 (1981). Under the circumstances here present, we agree with the trial court that the efforts of the Commonwealth to obtain the presence of the complaining witness were reasonable. It is not the role of a court to second-guess the methods used by the prosecutor to obtain the witness' presence, even when hindsight indicates that a more efficacious method might have been used. *Commonwealth v. Tann*, 298 Pa.Super. 505, 507–508, 444 A.2d 1297, 1298 (1982); *Commonwealth v. Long, supra*, 288 Pa.Superior Ct. at 419, 432 A.2d at 231. The failure to subpoena a witness cannot be equated with a lack of due diligence, especially where the witness in question is also the complainant. *Commonwealth v. Dancy*, 317 Pa.Super. 578, 585, 464 A.2d 473, 477 (1983). Indeed, this Court on prior occasions has suggested that the practice of putting witnesses on call may actually be preferable to issuing a subpoena for them where there is likelihood that a case may be delayed. "It insures that when the defense is actually ready to proceed to trial, the Commonwealth will be ready, unhampered by disillusioned witnesses who have 'given up' on the case and stopped showing up for trial listings." *Commonwealth v. Sheppard*, 305 Pa.Super. 283, 290, 451 A.2d 533, 536 (1982). See also: *Commonwealth v. Daniels*, 321 Pa.Super. 486, 490, 468 A.2d 814, 815–16 (1983). The trial court did not err in granting the Commonwealth's request for an extension.

Finally, appellant contends that Mahoney should not have been permitted to testify that it was appellant who accosted him on July 15 because his identification testimony was the product of a suggestive pre-trial confrontation. Mahoney, who was unable to identify appellant in a lineup conducted shortly after the incident, readily identified appellant at the preliminary hearing as one of his assailants. Appellant argues that this identification was the product of suggestiveness inherent in the preliminary hearing setting, at which the identity of the accused was obvious. He contends that the victim's in-court identification testimony, therefore, should have been suppressed, both because the victim had failed to identify him during a pre-preliminary

hearing lineup and also because of the inherently suggestive nature of the preliminary hearing.

■■■■ In determining the admissibility of identification testimony, the inquiry must be whether, under the totality of the circumstances, the identification was reliable. *Commonwealth v. Silver*, 499 Pa. 228, 235, 452 A.2d 1328, 1331 (1982); *Commonwealth v. Sample*, 321 Pa.Super. 457, 461, 468 A.2d 799, 801 (1983); *Commonwealth v. Johnson*, 301 Pa.Super. 13, 15, 446 A.2d 1311, 1312, *modified*, 499 Pa. 380, 453 A.2d 922 (1982). Where the circumstances demonstrate an independent basis for an identification, even an impermissibly suggestive pre-trial procedure will not bar an in-court identification. *Commonwealth v. Derrick, supra*, 322 Pa.Superior Ct. at 534, 469 A.2d at 1120; *Commonwealth v. Sample, supra*, 321 Pa.Superior Ct. at 462, 468 A.2d at 801; *Commonwealth v. Thompkins*, 311 Pa.Super. 357, 363, 457 A.2d 925, 928 (1983); *Commonwealth v. Spiegel*, 311 Pa.Super. 135, 144, 457 A.2d 531, 535–536 (1983). The factors to be considered in determining sufficient reliability to permit in-court identification testimony include "(1) the manner in which the pretrial identification was conducted; (2) the witness' prior opportunity to observe the alleged criminal act; (3) the existence of any discrepancies between the defendant's actual description and any description given by the witness before the [out-of-court] identification; (4) any previous identification by the witness of some other person; (5) any previous identification of the defendant himself; (6) failure to identify the defendant on a prior occasion; and (7) the lapse of time between the alleged act and the out-of-court identification." *Commonwealth v. Laurenson*, 323 Pa.Super. 46, 59–60, 470 A.2d 122, 128 (1983), quoting *Commonwealth v. Slaughter*, 482 Pa. 538, 546, 394 A.2d 453, 457 (1978). The most important of these factors is the opportunity of the witness to view the actor at the time of the crime. *Commonwealth v. Sample, supra*, 321 Pa.Superior Ct. at 462, 468 A.2d at 801; *Commonwealth v. Spiegel, supra*, 311 Pa.Superior Ct. at 145, 457 A.2d at 536; *Commonwealth v. Davis*, 293 Pa.Super. 447, 452, 439 A.2d 195, 198 (1981). Here, the victim was face to face with

appellant for "five to ten minutes in good light." This was sufficient to permit a finding by the suppression court that an independent basis existed for the victim's in-court identification.

■ The victim's prior failure to identify appellant did not render his identification testimony inadmissible per se. In *Commonwealth v. Zabala*, 303 Pa.Super. 72, 449 A.2d 583 (1982), this Court held:

> "The fact that the witnesses could not identify appellant in a photographic array does not render their in-court identifications any less admissible. The fact that they could not identify appellant earlier is relevant only to the weight and credibility of their testimony."

*Id.*, 303 Pa.Superior Ct. at 79, 449 A.2d at 587 (citations omitted). See also: *Commonwealth v. Hurd, supra.*

It is a significant fact in this case that appellant was arrested at the scene of the alleged robbery by a policeman who saw him back away from the complainant. When the victim pointed out the appellant and accused him of assaulting him, appellant was present on the scene and was immediately arrested. A subsequent suggestiveness inherent in a preliminary hearing was not likely to have produced a case of mis-identification under these circumstances.

The judgment of sentence is affirmed.