J-S41030-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| KATHY JO BELL | |
| Appellant | No. 2200 MDA 2014 |

Appeal from the Judgment of Sentence November 14, 2014
In the Court of Common Pleas of Dauphin County
Criminal Division at No(s): CP-22-CR-0005707-2013

BEFORE:  ALLEN, J., LAZARUS, J., and PLATT, J.[*]

MEMORANDUM BY LAZARUS, J.:                **FILED AUGUST 10, 2015**

Kathy Jo Bell appeals from the judgment of sentence, imposed in the Court of Common Pleas of Dauphin County, after a jury trial before the Honorable William T. Tully.  Upon careful review, we affirm.

The trial court has set forth the facts of this matter as follows:

On May 15, 2013, [Bell] was observed via closed-circuit television concealing merchandise into her sweatshirt from Gabriel Brothers in Harrisburg.  [Bell] was then observed walking past all points of sale and out of the store with the unpaid merchandise.  At this point, Jason Svieunovich (hereinafter "Jason"), Asset Protection Specialist at Gabriel Brothers, and Clyde Bentzel (hereinafter "Clyde"), District Asset Protection Manager at Gabriel Brothers, attempted to stop [Bell] on the sidewalk.

Jason first confronted [Bell] on the sidewalk and stated that he was from loss prevention and that he needed to ask [Bell] about

---

[*] Retired Senior Judge assigned to the Superior Court.

some unpaid merchandise. Initially, it appeared that [Bell] was going to be compliant, but she then became belligerent and uncooperative, and started to walk away. Clyde then grabbed [Bell's] arm so that she could not leave with the unpaid merchandise, and [Bell] pulled her arm away. [Bell] broke free of Clyde's grasp and started walking towards the parking lot. Jason positioned himself in front of [Bell], walking backwards, as [Bell] kept advancing towards the parking lot. Once it became apparent that [Bell] was not going to cooperate, Clyde and Jason decided to help [Bell] to the ground and handcuff her.

Once on the ground, [Bell] continued to scream obscenities and balled up so that Jason and Clyde could not retrieve the unpaid merchandise. Thereafter Jason and Clyde were able to handcuff [Bell] and bring her back to her feet. Jason and Clyde then escorted [Bell] to the loss prevention office. Once in the office, [Bell] briefly sat down and then stood up, began yelling obscenities, and got in Jason's face. Jason testified that "[Bell] got in my face about close enough that I thought she was going to spit on me, which thankfully she didn't, and then she started to levy threats against myself and my boss." One threat was "that she was going to have some guys come down or come up from the block and do some things to us . . . She [also] called my mom a racially charged word." Jason further testified that "[Bell] kind of linked the children part into the Newtown shooting . . . I guess insinuating that she was going to try to do harm to my kids or my boss's kids." Jason then called the police who arrived shortly thereafter.

Trial Court Opinion, 2/19/15, at 1-3.

At the trial, Clyde testified that Bell "went to swing towards Jason," but he grabbed Bell's "arm so she didn't strike Jason and held on to her." N.T. Trial, 10/23/14 – 10/24/14, at 79-80. Clyde also testified that Bell "made threatening remarks to my family as well as myself." *Id.* at 82.

On May 15, 2014, Bell was charged with robbery – threatening immediate serious injury,[1] and terroristic threats with intent to terrorize.[2] A trial was held on October 23 and 24, 2014, after which the jury found Bell guilty of one count of robbery – inflicting bodily injury or threatening another with immediate bodily injury,[3] and one count of terroristic threats with intent to terrorize another.[4] Bell was sentenced on November 14, 2014 to serve eighteen months of intermediate punishment with the first two months on house arrest and with electronic monitoring. The court ordered Bell to follow all medication regimens and psychologist or psychiatrist recommendations, and prohibited Bell from Gabriel Brothers. Bell filed post-sentence motions, which were denied. She filed this timely notice of appeal, as well as a court-ordered statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).

Bell raises the following issues for our consideration:

I.   Whether the Commonwealth failed to present sufficient evidence to sustain [Bell's] conviction for robbery where the Commonwealth failed to prove that [Bell] threatened another with or intentionally put another in fear of immediate bodily injury?

---

[1] 18 Pa.C.S.A. § 3701(a)(1)(ii).

[2] 18 Pa.C.S.A. § 2706(a)(1).

[3] 18 Pa.C.S.A. § 3701(a)(1)(iv).

[4] 18 Pa.C.S.A. § 2706(a)(1).

II. Whether the Commonwealth failed to present sufficient evidence to sustain [Bell's] conviction for terroristic threats where the Commonwealth failed to prove that [Bell] had the intent to terrorize and where [Bell] instead made a spur of the moment threat which resulted from anger?

III. Whether the trial court erred in denying [Bell's] Post-Sentence Motion where the jury's verdict was against the weight of the evidence so as to shock one's sense of justice where there were manifest discrepancies between the surveillance video and witness testimony, [and Bell] was never shown to have committed the robbery in question?

IV. Whether the trial court abused its discretion in admitting the testimony of Clyde Bentzel where such testimony was cumulative and irrelevant?

Amended Brief of Appellant, at 7.

Bell's first two issues are challenges to the sufficiency of the evidence.

We review a sufficiency of the evidence claim under the following standard:

The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for that of the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Vargas*, 108 A.3d 858, 867-68 (Pa. Super. 2014) (brackets omitted).

Bell first challenges the sufficiency of the evidence to convict her of robbery. Pennsylvania's robbery statute provides, in relevant part, as follows:

**§ 3701. Robbery.**

(a) Offense defined.

(1) A person is guilty of robbery if, in the course of committing a theft, he:

* * *

(iv) inflicts bodily injury upon another or threatens another with or intentionally puts him in fear of immediate bodily injury[.]

18 Pa.C.S.A. § 3701(a)(1)(iv).

Instantly, Bell alleges that the Commonwealth failed to prove that she threated Jason or intended to put him in fear of immediate bodily injury. Bell argues that there was no attempted punch, as video evidence did not show one; moreover, if she did make an attempt, it does not prove beyond a reasonable doubt that Bell intended to place Jason in fear of bodily injury.

In *Commonwealth v. Leatherbury*, 473 A.2d 1040 (Pa. Super. 1984), this Court held that an aggressive act intended to place the victim in fear that he was in danger of immediate physical harm was sufficient to support a robbery conviction under section 3701(a)(1)(iv). This Court held that the fact that the defendants did not actually inflict bodily injury was not controlling. *Id.* at 1042. Further, a punch to the face can cause serious

injury and it follows that an attempted punch would place a victim in fear of that potential serious injury. In **Commonwealth v. Farmer**, 361 A.2d 701, 702 (Pa. Super. 1976), the defendant grabbed the victim's pocketbook and punched her in the face. He was later convicted of robbery. This Court held that "the lower court justifiably concluded that appellant possessed the intent to place his victim in fear of such injury, since intent can, and in most cases necessarily must, be inferred from the circumstances and since a punch to the face can easily cause serious injury or even death." **Id.** at 702.

Here, based on the testimony of both Jason and Clyde, the jury believed that Bell threatened Jason with or intentionally put Jason in fear of immediate bodily injury. The evidence presented showed that Bell was acting aggressively, walking directly towards Jason and forcing him to continue to backpedal. Jason testified that he felt threated by these aggressive acts as he did not know what Bell would do next and what she was capable of doing. N.T. Trial, 10/23/14 – 10/24/15, at 40. Jason and Clyde also testified that Bell attempted to punch Jason, which could cause serious injury and would allow a jury to infer that Bell intended to place Jason in fear of immediate bodily injury. That Bell did not connect with her attempted punch is not controlling. **Leatherbury**, **supra**. Accordingly, viewing the evidence in the light most favorable to the Commonwealth as verdict winner, we agree with the trial court that there was sufficient evidence to convict Bell of robbery. **Vargas**, **supra**.

Bell next challenges the sufficiency of evidence to convict her of terroristic threats. Pennsylvania's terroristic threats statute provides, in relevant part, the following:

**§ 2706. Terroristic threats.**

(a) Offense defined. — A person commits the crime of terroristic threats if the person communicates, either directly or indirectly, a threat to:

(1) commit any crime of violence with intent to terrorize another

18 Pa.C.S. § 2706(a)(1).

Bell claims that the Commonwealth failed to prove that she had the intent to terrorize. Instead, Bell claims she made a spur-of-the-moment threat resulting from anger. Bell argues that the purpose of the terroristic threats charge is to impose criminal liability on people who make threats that seriously impair personal security or public convenience and not to punish spur of the moment threats resulting from anger. Bell is correct in pointing out that the purpose of section 2706, explained in the official comment, was not to penalize mere spur-of-the-moment threats which resulted from anger. *Commonwealth v. Walker*, 836 A.2d 999, 1001 (Pa. Super. 2003); 18 Pa.C.S. § 2706, Official Comment – 1972. However, "[b]eing angry does not render a person incapable of forming the intent to terrorize." *Walker,* 836 A.2d at 1001.

Bell attempts to compare the present case to past cases that held that the threats made by the defendants were mere spur-of-the-moment threats

and did not involve the sort of conduct that the legislature intended to punish. However, two cases that Bell cites to are distinguishable from the present case. **Commonwealth v. Kidd**, 442 A.2d 826 (Pa. Super. 1982), involved a defendant who was so inebriated and angry that he was found not to have exhibited the conduct made criminal by section 2706. In **Commonwealth v. Anneski**, 525 A.2d 373, (Pa. Super 1987), the defendant threatened her neighbor because her neighbor allegedly hit her child with a car. This Court held that such a response was not the type made criminal by section 2706. **Id.** Here, the defendant was neither inebriated nor responding to something so visceral as someone hitting her child with a car and, thus, the present case is distinguishable.

The facts of **Commonwealth v. Ashford**, 407 A.2d 1328 (Pa. Super. 1979), are very similar to the present case. In **Ashford**, the defendant was arrested and placed in handcuffs by officers. **Id.** at 1329. Upon being taken into the police car, the defendant began threatening the officers, claiming that he would hunt them down later on and kill them and their families. **Id.** This Court held that there was "ample evidence to support the jury's conclusion that appellant made the threats with the requisite intent to terrorize, and that his threats were more than mere spur-of-the-moment threats which result[ed] from anger." **Id.**

Here, Bell threatened Jason, Clyde, and their families after being handcuffed, similar to **Ashford**. When Jason and Clyde first confronted Bell, she shouted racial slurs and profanities at them out of anger; later, after

they walked to the loss prevention office, Bell began threatening Jason, Clyde, and their families with gun violence. Bell may still have been angry; however being angry does not render a person incapable of forming the intent to terrorize. **Walker**, **supra**. Accordingly, Bell's threats to have Jason, Clyde, and their families killed were sufficient to establish the offense of terroristic threats.

Bell next claims that her guilty verdict for the robbery offense was against the weight of the evidence. For this Court to reverse the trial court's verdict on weight of the evidence grounds, we must determine whether the trial court palpably abused its discretion in finding that the verdict is not so contrary to the evidence as to shock one's sense of justice. **Commonwealth v. Clay**, 64 A.3d 1049, 1055 (Pa. 2013); **Commonwealth v. Brown**, 648 A.2d 1177, 1189 (Pa. 1994).

> To make this determination, an appellate court must:
>
> Examine the record and assess the weight of the evidence; not however, as the trial judge, to determine whether the preponderance of the evidence opposes the verdict, but rather to determine whether the court below in so finding plainly exceeded the limits of judicial discretion and invaded the exclusive domain of the jury.

**Clay**, 64 A.3d at 1056 (citations omitted). It is not the place of an appellate court to invade the trial judge's discretion any more than a trial judge may invade the province of a jury, unless both or either have palpably abused their function. **Thompson v. Philadelphia**, 493 A.2d 669, 673 (Pa. 1985).

The weight to be given to any testimony is a determination that rests exclusively with the finder-of-fact. **Commonwealth v. Diamond**, 83 A.3d 119, 134 (Pa. 2013). The fact-finder is free to believe all, part, or none of the evidence, and credibility determinations rest solely within the purview of the fact-finder. **Id.** (citing **Commonwealth v. Treiber**, 874 A.2d 26 (Pa. 2005).

Bell argues that there were discrepancies between the surveillance video and witness testimony, and thus she was never shown to have committed the robbery in question. However, the trial court had the opportunity to be presented with all of the evidence and to determine its weight and credibility. The discrepancies that Bell refers to are minute details of the events, down to the smallest time difference of four seconds between Jason and Clyde's testimony of when Jason first placed his hands on Bell. Another alleged discrepancy lies within Jason and Clyde's testimony that Bell attempted to punch Jason and the fact that this was not visible on the surveillance footage. However, it was the exclusive duty of the finder-of-fact to determine the weight to be given to each part of the evidence. Upon review of the record, we can discern no abuse of discretion on the part of the trial court in finding that the verdict was not against the weight of the evidence.

Finally, Bell argues that the trial court abused its discretion in admitting Clyde's testimony because it was cumulative and irrelevant. We note that the admission of evidence is committed to the sound discretion of

the trial court and our review is for an abuse of discretion. ***Commonwealth v. Parker***, 104 A.3d 17, 21 (Pa. Super. 2014).

The Pennsylvania Rules of Evidence provide that evidence is relevant where "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Pa.R.E. 401. All relevant evidence is admissible, except otherwise provided by law, and evidence that is not relevant is inadmissible. Pa.R.E. 402.

The presentation of needlessly cumulative evidence is an exception to the general rule that all relevant evidence is admissible. Pa.R.E. 403. Cumulative evidence has been defined by this Court as additional evidence of the same character as existing evidence and that supports a fact established by the existing evidence. ***Commonwealth v. Flamer***, 53 A.3d 82, 88 n.6 (Pa. Super. 2012). However, evidence that strengthens or bolsters existing evidence is corroborative evidence and is not cumulative. ***Id.***

Bell claims that Jason, not Clyde, was the named victim in the criminal information and because Clyde's testimony did not add to Jason's, it was cumulative and irrelevant. Here, Clyde's testimony was not cumulative as it provided a different perspective of the events and bolstered the existing evidence. It is not important that Clyde is not named as a victim in the criminal information as his testimony was presented to demonstrate Bell's conduct towards Jason. Clyde's testimony allowed the fact-finder to hear

the observations of the ordeal from a third party to the criminal information and strengthened the existing evidence. Therefore, Clyde's testimony was corroborative, not cumulative, evidence. Accordingly, there was no abuse of discretion by the trial court in admitting Clyde's testimony as it was relevant and admissible.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/10/2015