**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 18-2969

———————

IAN TAPPER,
                    Appellant

v.

SUPERINTENDENT MAHANOY SCI;
ATTORNEY GENERAL OF THE COMMONWEALTH OF PENNSYLVANIA

———————

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civ. No. 2-15-03712)
District Judge: Eduardo C. Robreno

———————

Argued December 15, 2020

———————

Before: GREENAWAY, JR., SHWARTZ, and FUENTES, *Circuit Judges*.

(Opinion Filed: May 7, 2021)

Arianna J. Freeman
Federal Community Defender Office for the Eastern District of Pennsylvania
601 Walnut Street
The Curtis Center, Suite 540 West
Philadelphia, PA 19106

Jessica Tsang [*Argued*]
Federal Community Defender Office for the Eastern District of Pennsylvania
Capital Habeas Unit
601 Walnut Street
The Curtis Center, Suite 545 West

Philadelphia, PA 19106
        *Attorneys for Appellant*

Max C. Kaufman
Laura Zipin [*Argued*]
Philadelphia County Office of District Attorney
3 South Penn Square
Philadelphia, PA 19107
        *Attorneys for Appellee*

_____

OPINION[*]

_____

GREENAWAY, JR., *Circuit Judge*.

The Commonwealth of Pennsylvania tried Ian Tapper for robbery twice. The first jury acquitted Tapper of aggravated assault and possession of an instrument of crime. The same jury hung on the robbery charge. The second jury convicted Tapper of robbery. Tapper sought habeas relief, contending that the second trial was a violation of the Fifth Amendment protection against double jeopardy, as articulated in *Ashe v. Swenson*, 397 U.S. 436 (1970). The District Court disagreed and denied Tapper's habeas petition. For the reasons set forth below, we will affirm.

I.      **Background**

A.      **Factual Background**

On August 26, 2006, after two drinks at a bar in North Philadelphia, Edward Roberts and his friend, Jeffrey Branson, drove to a restaurant in West Philadelphia.

_____

[*] This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

Branson parked his vehicle and remained in it while Roberts went inside for food. Roberts waited about ten minutes for his food and then exited the restaurant.

As Roberts walked back to Branson's vehicle, Tapper approached Roberts from behind and asked, "where's the money?" JA113. Roberts thought Tapper was joking, and he kept walking. Roberts outweighed Tapper by almost one hundred pounds and was several inches taller than Tapper.

Tapper approached Roberts from behind again and grabbed him by the shirt. At this point, Roberts realized that Tapper was not joking, and Roberts began to punch Tapper. Roberts saw that it was Tapper who was accosting him. Roberts and Tapper fell to the ground as they tussled. Roberts never saw Tapper holding a gun, but he did hear shots. Roberts was shot in his chest, wrist, and thigh.

Roberts picked himself up off the ground and returned to Branson's vehicle. Branson sped down the street and nearly collided with a police car two blocks away from the restaurant. Officer Michael Carey, the driver of the police car, had been about a block away from the corner store and heard the gunshots. Officer Carey stopped the car and had Branson exit. Officer Carey questioned Branson, who explained that Roberts had been shot in front of the restaurant. Officer Carey also questioned Roberts, who provided a description of the shooter, but did not identify Tapper as the shooter. Officer Carey saw that Roberts was shot in the chest and allowed Branson to rush Roberts to the hospital.

Branson took Roberts to the Hospital of University of Pennsylvania, where Roberts underwent surgery for his wounds. Branson was then transported to the

3

Southwest Detectives Division, where he was interviewed. Branson was killed in a homicide before Tapper's first trial.

Two days after Roberts was shot, Karl Rone gave a statement to Detective Timothy McCool. Rone claimed that he was Roberts's neighbor and that he had spoken to Roberts six hours after the shooting. Rone also stated that Roberts told him Tapper was the shooter. Rone told Detective McCool that Tapper was "hot-tempered and carrie[d] a gun." JA151. Detective McCool inquired about the gun, and Rone stated that he thought Tapper carried a 9-millimeter gun and that the night before he had seen Tapper with the black butt of a gun in his waistband. Rone was killed in a homicide prior to Tapper's first trial.

Three days after the shooting, Roberts identified Tapper as the shooter in a photo array, circled Tapper's photograph, and signed it. Tapper was subsequently arrested.

## B.    Procedural Background

Tapper's first trial began on December 13, 2007. Tapper was charged with attempted murder, aggravated assault, robbery, and possession of an instrument of crime ("PIC"). Prior to closing arguments, Tapper's counsel moved for dismissal of the attempted murder charge, arguing that there was no specific intent to kill based on the evidence presented. The trial court dismissed the attempted murder charge without explanation.

Shortly after beginning its deliberations, the jury requested a "clarification o[f] the law." JA079. The trial court provided a clarification and the jury continued its deliberations. Shortly thereafter, the jury delivered its verdict, finding Tapper not guilty

4

on the aggravated assault and PIC charges. The jury hung on the robbery charge. After the jury was dismissed, the Commonwealth announced that they would retry Tapper.

On August 20, 2009, Tapper was retried for robbery. The jury returned a verdict of guilty on the same day it began its deliberations. Tapper was sentenced to nine to twenty years' imprisonment.

Tapper pursued a direct appeal of his conviction. That appeal was unsuccessful, with the trial court affirming the denial of Tapper's motion to dismiss[1] and the conviction.

Tapper then appealed his conviction to the Superior Court of Pennsylvania. The Superior Court rejected Tapper's double jeopardy argument, finding that his interpretation of the result of his first trial was "over simplistic." The Superior Court did not analyze the evidence and arguments presented during the trials. Instead, the Superior Court focused on the differences between the elements of robbery and aggravated assault. The Superior Court concluded, "a sole finding that [Tapper] did not have or use a gun is not dispositive of whether robbery was established at the second trial." JA418.

On June 30, 2015, Tapper filed a pro se petition for habeas corpus in the U.S. District Court for the Eastern District of Pennsylvania. The District Court referred Tapper's petition to Magistrate Judge Marilyn Heffley for a Report and Recommendation ("R&R"). Judge Heffley issued two R&Rs recommending that the District Court deny Tapper's petition.

---

[1] Prior to his second trial, Tapper moved to dismiss the robbery charge on double jeopardy grounds. On November 18, 2008, the trial court denied Tapper's motion.

On August 3, 2018, over Tapper's objections, the District Court approved and adopted Judge Heffley's second R&R. The District Court did not issue a certificate of appealability.

Tapper filed a timely notice of appeal and sought a certificate of appealability. On June 20, 2019, this Court granted Tapper a certificate of appealability.

## II.     Jurisdiction and Standard of Review

The District Court had jurisdiction pursuant to 28 U.S.C. § 2254. We have jurisdiction pursuant to 28 U.S.C. §§ 1291 and 2253.

Because the District Court did not conduct an evidentiary hearing, our review of the District Court's legal conclusions is plenary, and "we evaluate 'the state court['s] determinations under the same standard that the District Court was required to apply [as outlined below].'" *Williams v. Beard*, 637 F.3d 195, 204 (3d Cir. 2011) (quoting *Lewis v. Horn*, 581 F.3d 92, 100 (3d Cir. 2009)).

Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), when a habeas petitioner's claim has been adjudicated on the merits in state court, a federal court cannot grant a writ of habeas corpus unless the state court proceeding "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). "AEDPA erects '"a substantially higher threshold" for obtaining relief than de novo review.'" *Beard*, 637 F.3d at 204 (citation omitted).

6

The District Court determined that the Pennsylvania Superior Court incorrectly applied federal law, but that its decision was not an unreasonable application of federal law because the same outcome was justified under a proper *Ashe* analysis. Our plenary review focuses on that legal conclusion.

"[A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Williams v. Taylor*, 529 U.S. 362, 410 (2000) (emphasis in original). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411. Relief may only be granted if "the state court decision, evaluated objectively and on the merits, *resulted in an outcome* that cannot reasonably be justified under existing Supreme Court precedent." *Werts v. Vaughn*, 228 F.3d 178, 197 (3d Cir. 2000) (emphasis added) (quoting *Matteo v. Superintendent, SCI Albion*, 171 F.3d 877, 890 (3d Cir. 1999)).

## III. Discussion

Tapper argues that his second trial violated the rule of collateral estoppel as embodied in the Fifth Amendment's protection against double jeopardy. Tapper's argument proceeds in two parts.

*First*, Tapper contends that the first jury's not guilty verdicts reflected the jury's determination that Tapper "either did not possess a gun at all, or at least did not intend to use it to commit a crime, and that he, in fact did not use it against . . . Roberts or to

7

commit a crime."  Appellant's Br. 29.  In other words, Tapper argues that the first jury decided that he did not shoot Roberts.  *Id.*

*Second*, Tapper argues that the Commonwealth impermissibly "relitigated the issue of whether . . . Tapper shot . . . Roberts."  *Id.* at 31.  Specifically, Tapper contends that the Commonwealth's "sole theory [during the second trial] was that . . . Tapper shot . . . Roberts while trying to steal from him," and that the only evidence the Commonwealth presented was that Tapper harmed Roberts by shooting him.  *Id.* at 30.

We agree with Tapper on the first point and do not agree on the second point.

## A.    The Legal Framework

Tapper bears the burden of "'demonstrat[ing] that the issue whose relitigation he seeks to foreclose was actually decided' by a prior jury's verdict of acquittal."  *Bravo-Fernandez v. United States*, 137 S. Ct. 352, 359 (2016) (quoting *Schiro v. Farley*, 510 U.S. 222, 233 (1994)).  Under *Ashe*, collateral estoppel only bars the second trial "if to secure a conviction the prosecution must prevail on an issue the jury necessarily resolved in the defendant's favor in the first trial."  *Currier v. Virginia*, 138 S. Ct. 2144, 2150 (2018); *Ashe*, 397 U.S. at 446 (finding that once the first jury "had determined upon conflicting testimony that there was at least a reasonable doubt that the petitioner was one of the robbers, the State could not present the same or different identification evidence in a second prosecution for the [same] robbery . . . in the hope that a different jury might find that evidence more convincing.").  "To say that the second trial is tantamount to a trial of the same offense as the first and thus forbidden by the Double Jeopardy Clause, [the court] must be able to say that 'it would have been *irrational* for the jury' in the first

8

trial to acquit without finding in the defendant's favor on a fact essential to a conviction in the second." *Currier*, 138 S. Ct. at 2150 (emphasis in original) (quoting *Yeager v. United States*, 557 U.S. 110, 127 (2009) (Kennedy, J., concurring in part and concurring in the judgment)).

"[S]o long as a reasonable jury 'could have' based its decision on facts that would not create a double jeopardy violation, the subsequent prosecution may move forward." *Wilkerson v. Superintendent Fayette SCI*, 871 F.3d 221, 233 (3d Cir. 2017) (quoting *Ashe*, 397 U.S. at 444). "[W]here no clear answer emerges, the tie goes to the Government . . . ." *Id.* The defendant bears a "heavy burden," but "the government cannot avoid the preclusive effect of a general jury verdict by speculating that the verdict could have been based upon a finding that the government failed to prove elements that were never contested by the defense." *United States v. Rigas*, 605 F.3d 194, 217–18 (3d Cir. 2010).

The rule of collateral estoppel is "not to be applied with the hypertechnical and archaic approach of a 19th century pleading book, but with realism and rationality." *Ashe*, 397 U.S. at 444. We "examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration." *Id.* (citation omitted). "The inquiry 'must be set in a practical frame and viewed with an eye to all the circumstances of the proceedings.'" *Id.* (quoting *Sealfon v. United States*, 332 U.S. 575, 579 (1948)).

Within this framework, the Court must consider (1) what issue, if any, the first jury necessarily decided in Tapper's favor, and (2) whether the Commonwealth was required to prevail on that issue during Tapper's second trial to secure a conviction. *Currier*, 138 S. Ct. at 2150.

### B.    Tapper's First Trial

We agree with Tapper that the first jury necessarily decided that he was not the shooter based on three factors: the Commonwealth's framing of the case and the evidence proffered; Tapper's counsel's theories of the case; and the trial court's answers to questions from the jury.

The Commonwealth opened the trial by describing it as "a case of robbery turned to gun violence" and "a case of senseless violence where this defendant, Ian Tapper, shot another young man multiple times in the chest, in the wrist, in the leg." JA108. Nearly all of the testimony the Commonwealth elicited and the physical evidence it introduced was focused on the issue of whether Tapper was the shooter. For example, the Commonwealth secured testimony that Roberts saw and identified Tapper seconds before he was shot and introduced ballistics evidence to establish that Roberts was shot with a 9mm handgun. The Commonwealth also introduced a statement by Karl Rone that Tapper had access to a 9-millimeter handgun. In closing, the Commonwealth reiterated that "this case was a robbery turned to gun violence. One man shooting another young man multiple times in the chest and in the leg, and all of the evidence that you've heard, and believe me, it's there beyond a reasonable doubt, is that this defendant was the shooter." JA167.

Throughout the first trial, Tapper's counsel attempted to develop two theories that focused on the issue of whether Tapper was the shooter. *First*, defense counsel attempted to undermine Roberts's testimony that there was no one else present outside of the restaurant at the time he was shot. *Second*, Tapper's counsel attempted to develop the theory that the police failed to collect Roberts's clothing and never tested it to see if Roberts was shot from close range. These two themes came together during defense counsel's closing argument, when he argued that someone else other than Tapper could have shot Roberts as a way of coming to Tapper's defense when the larger Roberts began striking Tapper.

The trial court's response to the jury's questions[2] further confirms that the jury decided that Tapper was not the shooter. The trial court stated:

> [T]here's no question of fact that [Roberts] did, in fact, suffer serious bodily injury as that is defined in the law. . . . [T]he remaining questions as to each the robbery and the aggravated assault is did the defendant, beyond a reasonable doubt, cause that injury in the course of committing an aggravated assault and in the course of committing a robbery.
>
> To find the accused guilty of aggravated assault the following elements have to be proven: First, that the defendant caused serious bodily injury. Half of that – I've instructed you already – serious bodily injury was, in fact, caused. The question remains, as to that element, did the defendant cause the serious bodily injury.
>
> Second, if he did cause the serious bodily injury, was he acting intentionally, knowingly, or recklessly under circumstances manifesting an extreme indifference to the value of human life?

---

[2] The jury asked: "To find [the] defendant guilty of [aggravated] assault, do we have to believe he was the shooter? In other words, [aggravated] assault charge encompasses the shooting, [and] the robbery does not, correct?" JA079.

11

JA184–85. Because the trial court instructed the jury that there was no question of fact regarding whether Tapper suffered serious bodily injury, the jury only had to consider whether the evidence was sufficient to find beyond a reasonable doubt (1) that Tapper caused Roberts's serious bodily injury and (2) that Tapper caused that injury with the requisite mens rea.

The Commonwealth argues that the "jury could have rationally concluded that Tapper shot the victim but lacked the requisite mental state." Appellee's Br. 22. In support of this argument, the Commonwealth points to a potential self-defense argument and the trial court's confusing instructions regarding the mens rea requirements. These arguments are unconvincing because it was the Commonwealth that introduced the size disparity between Tapper and Roberts and it did not do so to support a potential self-defense defense for Tapper.

Moreover, there is a difference between the introduction of facts that "raised the possibility of self-defense," Appellee's Br. 22, and the defense actually disputing the issue. Under *Ashe*, the Court considers the latter, not the former. *See Ashe*, 397 U.S. at 444 n.9. The trial court's muddled instructions regarding the required mental state might have been relevant to our analysis if Tapper's counsel had actually put Tapper's mental state in dispute. Tapper's counsel, however, did not dispute Tapper's mental state. Disputing Tapper's mental state would have been wholly inconsistent with the defense theory that Tapper was not the shooter.

12

As a result of the trial court's instruction, the only disputed issue the jury had to resolve on the aggravated assault charge was whether the evidence was sufficient to establish beyond a reasonable doubt that Tapper caused Roberts's gunshot wounds; i.e., was Tapper the shooter. The jury's not guilty verdict on that issue reflects that the jury decided that Tapper was not the shooter.[3]

## C.   **Tapper's Second Trial**

To succeed on his double jeopardy claim, Tapper must establish that to secure a conviction on the robbery charge at the second trial, the Commonwealth had to prevail on the issue of the whether or not he was the shooter. *See Ashe*, 397 U.S. at 446. Tapper cannot meet this burden.

The trial court's jury instructions on the robbery charge were clear and devoid of the potential confusion attending the overlapping elements at issue during Tapper's first trial. The trial court instructed the second jury that for it to find Tapper guilty, the Commonwealth had to prove beyond a reasonable doubt that Tapper "intentionally put the victim in fear of immediate serious bodily injury; and . . . did this during the course of committing a theft." JA289. Thus, unlike the first jury, the second jury was not asked to consider whether Tapper shot Roberts.

---

[3] Tapper also contends that when acquitting Tapper on the PIC charge, "the jury necessarily decided that . . . Tapper did not possess a gun with the intent to use it to commit aggravated assault or robbery." Appellant's Br. 29. The record as to what the jury decided in relation to the PIC charge is less clear than on the aggravated assault charge. The trial court did not narrow the issues for the jury as it did with the aggravated assault charge. Tapper's defense did not dispute whether Tapper possessed a weapon or had the requisite intent to use it to commit aggravated assault or robbery. Instead, the defense disputed whether Tapper was the shooter.

13

Tapper contends that the Commonwealth relied on the same Tapper-was-the-shooter theory during the second trial and never "once argued that . . . Tapper put . . . Roberts in fear of serious bodily injury in any way." Appellant's Br. 30–31. Per Tapper, the issue of whether he was the shooter was the "ultimate issue of fact at both trials," and a retrial on the same theory violated the Double Jeopardy Clause. Appellant's Br. 32.

Tapper's argument does not accord with the evidence presented during the second trial. The Commonwealth presented a substantial amount of evidence to support a finding that Tapper placed Roberts in fear of immediate serious bodily injury separate and apart from the shooting. This evidence included the time of night; Tapper's demand for money; Tapper's approaching Roberts from behind, twice; Tapper's grabbing of the back of Roberts's shirt; and Roberts's reaction to Tapper—a nearly immediate resort to violence—from which the jury could infer that Roberts was in fear of immediate serious bodily injury.

Notwithstanding the Commonwealth opening the second trial with the same description it used to open the first trial—a "robbery turned to gun violence"—the issue of whether Tapper threatened Roberts with immediate serious bodily injury was not "inextricable" from the issue of whether Tapper was the shooter. JA209; Appellant's Br. 32. In the context of the second trial, where the jury only had to determine whether there was sufficient evidence for a robbery conviction, this framing suggests that one of the

14

Commonwealth's theories may have been that the robbery was completed in the seconds prior to the shooting.[4]

The evidence presented during the second trial was sufficient to sustain a conviction for robbery absent evidence of the shooting. *See, e.g., Commonwealth v. Leatherbury*, 473 A.2d 1040, 1042–43 (Pa. Super. Ct. 1984) (affirming convictions for robbery and assault (which required a threat of "imminent *serious bodily injury*") when the defendant and another assailant approached an elderly man walking alone at 1:15 a.m., grabbed him by both arms, and demanded money and his wallet (emphasis added)); *Commonwealth v. Mays*, 375 A.2d 116, 117–18. (Pa. Super. Ct. 1977) (affirming a robbery conviction where the complainant's long-time acquaintance followed her into a stairwell, stuck an unidentified object into her side, and declared that it was a "stickup").

In sum, the ultimate issue decided by the first jury—that Tapper was not the shooter—was not essential to Tapper's conviction for robbery during the second trial. As a result, Tapper's second trial was not a violation of the Double Jeopardy Clause.[5] *See Ashe*, 397 U.S. at 446; *see also Currier*, 138 S. Ct. at 2150.

---

[4] Tapper highlights the fact that during closing arguments, the Commonwealth argued that "[r]obbery is simply in the course of committing a theft inflicting serious bodily injury on another person. It encompasses a shooting." JA279. This language is insufficient to convince us that the second jury necessarily considered whether Tapper was the shooter in light of the Commonwealth also arguing that the robbery and shooting were separate. Also, the jury instructions made clear that one of the relevant questions was whether Tapper put Roberts in fear of serious bodily injury, not whether Tapper caused serious bodily injury.

[5] On reply, Tapper argues that the Commonwealth was barred from introducing evidence and advancing arguments regarding Tapper being the shooter. Despite raising this argument before the District Court, Tapper did not raise this argument in his opening

15

*      *      *

The Superior Court did not consider the entire record and focused on the differences between the elements of aggravated assault and robbery. This approach ignored the requirements of *Ashe* and was an incorrect application of federal law. *See Ashe*, 397 U.S. at 444 (requiring courts to "examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter"). Nevertheless, the Superior Court's application of federal law was not unreasonable because the same outcome, a denial of the relief Tapper seeks, is justified under *Ashe*. *See Werts*, 228 F.3d at 197.

## IV.     Conclusion

For the reasons set forth above, we will affirm the District Court's order.

---

brief before this Court. This argument, accordingly, is forfeited. *See In re Wettach*, 811 F.3d 99, 115 (3d Cir. 2016) (holding that arguments not developed in an appellant's opening brief are forfeited).

16